AMERICAN TRADING COMPANY *vs.* NATIONAL FIBER AND INSULATION COMPANY.

1. CONTRACTS—TO SUPPLY BUYER'S REQUIREMENTS NOT VOID FOR LACK OF MUTUALITY, IF QUANTITY ASCERTAINABLE.

Contracts involving all of the buyer's requirements or consumption of goods purchased are not void, for lack of mutuality and certainty, if, in view of the surrounding circumstances, the quantity contracted for can reasonably be ascertained, or is capable of being approximately ascertained, at the time of making the agreement.

2. CONTRACTS—SALE INVOLVING ALL OF BUYER'S REQUIREMENTS, WHEN NOT VOID FOR LACK OF MUTUALITY AND CERTAINTY.

If a buyer of all goods of a certain kind that he may require during a certain period has an established business which will require the goods contracted for, it is presumed the business will continue, and under such circumstances the seller can approximately estimate the quantity of the goods that will be required by the purchaser in his business, and there is no lack of mutuality of obligation and certainty; but the opposite is true when the engagement of the buyer is merely to receive the goods he may want or order, or when his business is not established, and there is no reasonable probability that the business will continue, engagement of a buyer in such case being but an option to take or not, which is void for want of mutuality or certainty.

3. SALES—DECLARATION FOR BREACH OF CONTRACT TO DELIVER GOODS REQUIRED BY BUYER INSUFFICIENT.

In an action by a buyer of all of certain goods that would be required by the buyer during a certain period for damages for refusal to  accept order, declaration was insufficient, where it did not show the business that the plaintiff was engaged in, or that it was engaged in any business, and no surrounding circumstances were alleged which might make the quantity required certain.

4. PLEADING—DECLARATION MUST STATE GOOD CAUSE OF ACTION.

A declaration must state a good cause of action, and the averment of a written agreement, which is not enforceable without proof of other facts not averred in the declaration, does not constitute a good cause of action.

5. Contracts—Acceptance of Orders Held Not to Validate Agreement as to Articles not Purchased or Delivered.

Accepted orders for goods under contracts void for lack of mutuality or certainty as to amount of goods constitute sales of the goods thus ordered at the prices named in the contracts; but they do not validate the agreements as to articles which the one refuses to purchase or the other refuses to sell or deliver under the void contract.

6. Sales—Declaration for Breach of Contract Need Not Specifically Aver use for Which Goods Desired.

In an action for damages for refusal to deliver goods under a contract whereby defendant agreed to deliver to plaintiff such goods as it might require during a certain period, where the contract was set out in full in the narr., and it was alleged that plaintiff sent numerous orders to be filled by defendant, it was not further incumbent on the plaintiff to more specifically aver that the goods ordered were for plaintiff's own consumption, or that it was for certain foreign markets, assuming that the contract was not void for lack of mutuality and certainty.

7. Sales—Declaration Sufficiently Informed Defendant of Damages Claimed for Breach of Contract of Sale.

In an action for damages for refusal to deliver goods under a contract whereby defendant agreed to deliver all goods that plaintiff might require during a certain period, declaration *held* to sufficiently inform the defendant of the damages claimed by the plaintiff.

(*June* 17, 1920)

Pennewill, C. J. and Rice, J., sitting.

*Herbert H. Ward*, Jr. (of Ward, Gray and Neary) for plaintiff.

*James I. Boyce* (Robert H. Richards and Philip L. Garrett on Brief) for defendant.

See also page 258 hereof.

Superior Court for New Castle County, March Term, 1920.

Sums. Case, No. 21, September Term, 1918.

Action by the American Trading Company against the National Fibre & Insulation Company. On demurrer to the amended declaration. Demurrer sustained.

This action was brought upon an agreement, made between the parties, set out in full in the declaration, and omitting the prices listed and the terms with regard to charges for cases, is as follows:

This agreement, made and entered into this 7th day of May, 1915, by and between the National Fibre & Insulation Company of Yorklyn, Delaware, and the American Trading Company of New York, witnesseth:

Statement.

The American Trading Company agrees to purchase from the National Fibre & Insulation Company their entire consumption of vulcanized fibre and insulating papers covering a period of one year from May 7, 1915, to May 7, 1916, on the following terms and conditions, and in consideration of which the National Fibre & Insulation Company agrees to protect the American Trading Company against any advance or decline in prices as herein listed: * * *

TERMS.

Upon the American Trading Company submitting proof that goods have been exported a commission of 5% on thirty days' time and a further 2% for cash in ten days will be paid by the National Fibre & Insulation Company, but no commission shall be paid on shipments to British North America. All prices are f. o. b. steamer New York or Philadelphia with the following charges for cases: * * *

QUALITY.

It is understood that on material furnished by National Fibre & Insulation Company is guaranteed to be equal to the usual standard quality and subject to return at their expense in case it is not up to standard. No shipment, however, is to be returned until condemned by a committee consisting of a representative of the American Trading Company, a representative of the National Fibre & Insulation Company, who is to be selected by themselves or the American consul, and a third member to be appointed by these two. The expense of such arbitration to be borne according to the award of the arbitrators. It is understood that if shipments to the China, Japan, Philippine, Australian and South African markets are unsatisfactory that this contract is subject to cancellation.

CONDITIONS.

Fire, accident, or strike in the works of either party to this contract or on transportation lines rendering buyers unable to receive or sellers unable to deliver make this contract inoperative during repairs, rebuilding, or continuance of difficulties.

TERRITORY.

This contract is to apply to the markets of China, Japan, the Philippines, Australia, and South Africa, and the National Fibre & Insulation Company agree to refer all inquiries from these markets to the American Trading Company.

[Signed]    National Fibre & Insulation Co.,          By S. E. FRANCIS.
Accepted:   American Trading Company, by ——.

On the same day an additional stipulation with regard to said agreement, submitted in writing by the American Trading Company and A. O. Schoonmaker Company, was accepted by the National Fibre & Insulation Company, as follows:

1.    The National Fibre & Insulation Company have an agreement with the A. O. Schoonmaker Company to refer all inquiries from the markets mentioned in said contract to the A. O. Schoonmaker Company, therefore, making effective such contract as an exclusive agency agreement, the A. O. Schoonmaker Company in turn having agreed to give us an undertaking of a similar nature.

2.   That the protection against the decline in price that the National Fibre & Insulation Company agrees to give to the American Trading Company covers any decline in market prices of standard fibre up to the time of shipment of any goods that may be under order.   * * *

3.   Under the heading of "Terms" the charge for cases is eliminated.

It is averred in the amended declaration, in the first count, after bringing into court said agreement and setting it forth in full:

*   *   *   That   *   *   * said American Trading Company * * * at the special instance and request of the said National Fibre & Insulation Company bargained with the said National Fibre & Insulation Company to buy of it, the said National Fibre & Insulation Company, and the said National Fibre & Insulation Company then and there sold to the said American Trading Company, a large quantity of vulcanized fibre and insulating paper, to wit, the American Trading Company's entire consumption of vulcanized fibre and insulating papers covering a period of one year, from May 7, 1915, to May 7, 1916, upon the said certain terms and conditions contained in the said written contract dated May 7, 1915, and in consideration thereof and that the American Trading Company at the like special instance and request had then and there undertaken and faithfully promised the said National Fibre & Insulation Company to accept and receive the said vulcanized fibre and insulating papers, and to pay for the same at the rate or price agreed upon in the said contract above set out, it, the said National Fibre & Insulation Company, undertook to deliver the said vulcanized fibre and insulating papers to it, the said American Trading Company as aforesaid, and thereafter, on various occasions between the period of one year from May 7, 1915, to May 7, 1916, the said American Trading Company sent to the said National Fibre & Insulation Company numerous orders to be filled by the said National Fibre & Insulation Company according to its aforesaid agreement, which orders are known and designated by the following orders, to wit: *   *   *   And Although the said time for the delivery of said vulcanized fibre and insulating papers mentioned in said order as aforesaid has long since elapsed, and the said American Trading Company has always been ready and willing to accept and receive said vulcanized fibre and insulating papers so ordered, and to pay for the same at the rate or price aforesaid, to wit, at the county aforesaid, yet the said National Fibre &. Insulation Company, not regarding its said promises and undertakings, but contriving to deceive and defraud the said American Trading Company in this behalf, did not nor would not within the time aforesaid, or at any time afterwards, deliver the said vulcanized fibre and insulating papers contracted and agreed by the said defendant to be delivered and specified in said orders to said American Trading Company at the county aforesaid or elsewhere, as will appear from schedule designated as "A" hereto attached and made a part hereof, but wholly neglected and refused so to do, whereby the said American Trading Company hath lost and been deprived of divers great gains and profits which might and otherwise would have arisen and accrued to it from the delivery of said vulcanized fibre and insulating papers to wit, the American Trading Company aforesaid, to wit, at the county aforesaid.   Wherefore, etc.

In the second count:

*   *   *That   *   *   * said National Fibre & Insulation Company bargained for and agreed to buy of and from the said National Fibre & Insula-

tion Company another large quantity , to wit, the American Trading Company's entire consumption of vulcanized fibre and insulating papers covering a period of one year from May 7, 1915, to May 7, 1916, upon the said certain terms and conditions contained in the said written contract dated May 7, 1915, which should be delivered for the American Trading Company within a reasonable time, to wit, at the city of New York in the county of New York and state of New York, and thereupon, in consideration of the premises and also in consideration that the said American Trading Company, at the like special instance and request of the said National Fibre & Insulation Company had then and there undertaken and promised the said National Fibre & Insulation Company to accept delivery at New York of the said vulcanized fibre and insulating papers, and to pay the said National Fibre & Insulation Company for the same at the rate aforesaid, the said National Fibre & Insulation Company on the day aforesaid, at the place aforesaid, undertook and then and there faithfully promised the said American Trading Company that it, the said National Fibre & Insulation Company, would, within a reasonable time then next following, deliver to it, the said American Trading Company, in manner aforesaid, the said quantity of vulcanized fibre and insulating papers, of such character as hereinabove mentioned, to be so carried and conveyed as aforesaid, and thereafter, on various occasions between the period of one year from May 7, 1915, to May 7, 1916, the said American Trading Company sent to the National Fibre & Insulation Company numerous orders to be filled by the said National Fibre & Insulation Company according to its aforesaid agreement, which orders are known and designated by the following numbers, to wit: *   *   * And although a reasonable time for this purpose has long since elapsed, and the said American Trading Company was always during that time ready and willing to have accepted delivery of said vulcanized fibre and insulating papers as aforesaid, and to have paid the said National Fibre & Insulation Company for the same at the rate hereinbefore set forth, to wit, at the county aforesaid, whereof the said National Fibre & Insulation Company then had notice, yet the said National Fibre & Insulation Company, not regarding, etc.

### In the third count:

*   *   *In consideration that the said American Trading Company, at the like special instance and request of the said National Fibre & Insulation Company had then and there contracted and agreed with it to buy and purchase of and from it, the said National Fibre & Insulation Company, another large quantity, to wit, the American Trading Company's entire consumption of vulcanized fibre and insulating papers, covering a period of one year from May 7, 1915, to May 7, 1916, upon the said certain terms and conditions contained in the said contract dated May 7, 1915, it, the said National Fibre & Insulation Company, undertook and then and there faithfully promised the said American Trading Company to deliver the aforesaid vulcanized fibre and insulating paper to it, the said American Trading Company, at the city of New York, county of New York, and state of New York, and thereafter on various occasions between the period of one year from May 7, 1915, to May 7, 1916, the American Trading Company sent to the National Fibre & Insulation Company numerous orders, which orders are known and designated by the following numbers: *   *   * —to be filled by the said National Fibre & Insulation Company according to its aforesaid agreement, and although the said National Fibre & Insulation Company afterwards, to wit, at the county aforesaid, might have delivered the same before the commencement of this action, yet the said National Fibre & Insulation Company, not regarding, etc.

Statement.

A schedule of the orders without dates made for said vulcanized fibre and insulating paper was annexed to the declaration and made a part of each of the counts. Damage laid in $100,000.

The causes of demurrer as grouped appear in the opinion of the court.

### ARGUMENT FOR DEFENDANT.

The agreement shown by the declaration is void for uncertainty and want of mutuality.

There is nothing in either the agreement or the declaration to indicate the possible or probable "consumption" of the American Trading Company. There is no suggestion of an established business using a definite quantity of vulcanized fibre and insulating papers. There is no intimation that the National Fibre & Insulation Company had any knowledge of the normal requirements of the plaintiff, if, indeed, the plaintiff had any normal requirements. Under such an agreement the plaintiff might demand no fibre, or an insignificant quantity, or so great a quantity that the defendant could not produce or procure it. *Baily v. Austrian*, 19 *Minn.* 535 (*Gil.* 465), followed in *Tarbox v. Gotzian*, 20 *Minn.* 139 (*Gil.* 122).

These cases are typical of the earlier decisions, and are still followed in many of the courts. But the later decisions are inclined to construe such contracts in the light of the surrounding circumstances.

If by the aid of such surroundings the quantity purchased can be made reasonably to appear or is capable of an approximately accurate estimate, and if it also appears that the vendee is in a position where he will require in his business the commodities which are the subject of the contract, the courts are inclined to imply an agreement upon his part that he will purchase all of that commodity covered by the contract which he may need in his business; and further to imply an agreement upon his part that he will continue in business and continue to use and need the commodity mentioned.

Among the decisions which have covered cases of this sort, those of Judge Sanborn and Judge Lurton stand out as the best

and most widely quoted expositions of the law.  *Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co.*, 114 *Fed.* 77, 52 *C. C. A.* 25, 57 *L. R. A.* 696.

In *Loudenback Fertilizer Co. v. Tenn. Phosphate Co.*, 121 *Fed.* 298, 58 *C. C. A.* 220, 61 *L. R. A.* 402, the contract provided that the plaintiff was to have the right to demand as much as three thousand tons annually;  and it also recited:

"It is understood that your present annual consumption is estimated a something like fifteen hundred tons under normal conditions."

Judge Lurton distinguished this case from those where the quantity to be furnished under the contract was not capable of approximate certainty. .

In *T. B. Walker Manufacturing Co. v. Swift & Co.*, 200 *Fed.* 529, 119 *C. C. A.* 27, 43 *L. R. A.* (*N. S.* 730), the difference between a contract where the quantity is indefinite and a contract where the quantity can be estimated with reasonably degree of certainty is clearly stated.  *Lima Locomotive & Machine Co. v. National Steel Castings Co.*, 155 *Fed.* 77, 83 *C. C. A.* 593, 11 *L. R. A.* (*N. S.*) 713.  We respectfully submit that this last case is exactly in point under the present declaration.  13 *C. J.* 339, 340, 341, and notes;  23 *R. C. L.* 1264-1268, and notes;  *Higbie v. Rust*, 211 *Ill.* 333, 71 *N. E.* 1010, 103 *Am. St. Rep.* 204;  *Minnesota Lumber Co. v. Whitebreast Coal Co.*, 160 *Ill.* 85, 43 *N. E.* 774, 31 *L. R. A.* 529; *Hoffman v. Maffioli*, 104 *Wis.* 630, 80 *N. W.* 1032, 47 *L. R. A.* 427.

Where the buyer, by a contract, is under no obligation to order the subject matter of the contract at any particular time or in any specified quantity, but what he does in this regard is entirely optional with him and dependent upon the condition of his business and trade, the contract is invalid for uncertainty and want of mutuality.

In *Joliet Bottling Co. v. Joliet Citizens' Brewing Co.*, 254 *Ill.* 215, 98 *N. E.* 263, the court held a " requirement" contract void.

The question is whether the plaintiff must add to his narr. such averments as may give certainty and mutuality to his contract or whether the plaintiff may go to trial and there produce

evidence to make his contract valid. It is respectfully submitted that the declaration must show a cause of action. As the declaration now stands, the contract is wholly void for uncertainty and want of mutuality.

In *Jenkins & Co. v. Anaheim Sugar*, 247 *Fed.* 958, 160 *C. C. A.* 658, *L. R. A.* 1918E, 293, the Circuit Court of Appeals held the contract valid, but it did so expressly upon the following grounds:

"The complaint charges that the contract was made with the knowledge on the part of the defendant of how plaintiff's business was conducted, and that plaintiff made contracts with customers for sale and delivery of sugar to be acquired under the contract with defendant, and knowing what the probable requirements of plaintiff would be."

Without these averments of an established business, a definite consumption, and knowledge of this consumption on the part of the defendant, the court would doubtless have sustained a demurrer to the declaration.

In *Parks et al. v. Griffith & Boyd Co.*, 123 *Md.* 233, 91 *Atl.*581, 583, the agreement was similar to but less artifical than the one contained in the present declaration. A demurrer to each count on the alleged agreement was sustained and approved by the Court of Appeals on the ground that the contract sought to be set up was too vague and uncertain. See same case on demurrer to plea, 117 *Md.* 494, 83 *Atl.* 559.

It is submitted as obvious that the defense to the counter-claim interposed in the recent case of *Dowd v. Hercules Powder Co.* (*Colo.*) 181 *Pac.* 767, was unnecessarily pleaded, and that the question would have been properly raised by demurrer. It does not appear from the declaration that the vulcanized fibre therein referred to was ordered by the plaintiff for its own consumption during the period of one year from May 7, 1915, to May 7, 1916.

The contract as alleged is at most an executory agreement. It is incumbent upon the plaintiff to allege affirmatively that it did purchase or was ready to purchase its entire consumption from the defendant and also that any fibre ordered by it was for its consumption. 1 *Chit. on Plead.* 320.

The alleged orders attached to the declaration are undated. For anything which appears, the plaintiff may not have ordered

Statement.

any fibre during the first eleven months covered by the alleged agreement and may have ordered during the last month of the alleged agreement large quantities of fibre which could not have been for its consumption during the period covered by the contract. The plaintiff must expressly and affirmatively show that it did order all of its consumption from the defendant or must show some breach on the part of the defendant which excused the plaintiff from performance. It does not appear from the declaration that the defendant ever sold or agreed to sell to the plaintiff any vulcanized fibre.

The only covenants of the defendant are to protect the plaintiff "against any advance or decline in prices" as listed in the alleged agreement and to pay, upon the American Trading Company submitting proof that goods have been exported, a commission of 5 per cent. on 30 days' time and a further 2 per cent. for cash in 10 days. The declaration does not allege a breach of either of these covenants. The declaration is in special counts for goods bargained and sold. It is fundamental that goods are not bargained and sold until the title to them has passed to the vendee. The counts and the damages alleged therein are appropriate to an executed contract of sale and not appropriate to an executory contract to sell. It is submitted therefore that the declaration cannot stand unless it alleges a breach of the covenants contained in the contract. It does not appear from the declaration that the vulcanized fibre therein referred to was ordered by the plaintiff for the markets of China, Japan, the Philippines, Australia and South Africa, or any of said markets.

Under the heading "Terms," it appears that the prices against any advance or decline in which the defendant agreed to protect the plaintiff were f. o. b. steamer New York or Philadelphia.

Under the heading "Quality," the following appears:

"It is understood that if shipments to the China, Japan, Phillippine, Australian and South African markets are unsatisfactory, that this contract is subject to cancellation."

Under the heading "Territory," it appears as follows:

"This contract is to apply to the markets of China, Japan, the Philippines, Australia, and South Africa, and the National Fibre & Insulation Company agree to refer all inquiries from these markets to the American Trading Company."

The letter attached to and forming a part of the alleged agreement of May 7, 1915, is headed, "China and Japan Export Dept.," and it appears from the said letter that the defendant already had an agreement with A. O. Schoonmaker Company to refer all inquiries from the markets mentioned in said contract to the A. O. Schoonmaker Company, therefore making effective such contract as an exclusive agency agreement, and that the A. O. Schoonmaker Company, in turn, had agreed to give the plaintiff an undertaking of a similar nature. It is evident, therefore, that the alleged contract was intended to be an exclusive agency agreement with regard to the markets of China, Japan, the Philippines, Australia and South Africa. There is nothing in the declaration and nothing in the schedule of orders attached to the declaration to show that the goods ordered were for the designated markets. It is, of course, necessary for the plaintiff to allege that he was within the terms of his "exclusive agency agreement."

The schedule of orders attached to the declaration is insufficient to inform the defendant as to the nature and amount of the damages claimed by the plaintiff.

The orders are undated. They do not show for what market the goods were intended. They do not show whether the goods were on 30 days' time or for a further 2 per cent. for cash in 10 days. And they do not show whether there was any advance or decline in prices as listed in the alleged agreement. Without more specific information the defendant could not be prepared to meet the damages which the plaintiff might attempt to prove.

The defendant confidently relies upon uncertainty and a want of mutuality in the contract as alleged in the declaration. Unless the consumption of the plaintiff is alleged and shown to have been a reasonably certain quantity, the contract was one subject to the whim, desire or caprice of the plaintiff. It might order no goods at all. It might order quantities which the defendant could not possibly supply. It is submitted, therefore, that the plaintiff

Statement.

must show by his declaration that the agreement was not void for uncertainty and want of mutuality and the plaintiff must show affirmatively that it comes within all the terms of the alleged agreement.

### Plaintiff's Argument.

We contend that mutuality between the parties is disclosed in the alleged agreement.

Where the acceptance really imposes any obligation on the acceptor, then a consideration is present, and a binding contract results, and this holds true wherever the acceptor's freedom of action is in any way limited. It is limited in cases where the offer is to supply him with all the goods of a particular kind which he may require or which he may need during a certain time, for here, although it may be that he will neither need nor require any, yet if he does require any, he has bound himself to buy them of the proposer, and has hence parted with his right to buy them from whom he pleases. *National Furnace Co. v. Keystone Mfg. Co.*, 110 *Ill.* 427.

If there is anything in the old doctrine, which the early cases in Minnesota, represented by *Baily v. Austrian*, 19 *Minn.* 535 (*Gil.* 465), and followed in *Tarbox v. Gotzian*, 20 *Minn.* 139 (*Gil.* 122), stand for, the court in the above cited Illinois case has drawn the correct distinction between the cases, and for the reasons given in the Illinois case, the contract in our case is not bad for lack of mutuality.

The case of *Higbie v. Rust*, 211 *Ill.* 333, 71 *N. E.* 1010, 103 *Am. St. Rep.* 204, was a "want" case as distinguished from a "consumption" case, governed by the Minnesota case of *Bailey v. Austrian, supra*.

In *Burgess Sulphite Fibre Co. v. Bloomfield*, 180 *Mass.* 283, 62 *N. E.* 367, the buyer refused to buy all the seller would sell, though the seller was willing, while our case is a case where seller refused to sell all buyer would take. This case illustrates the principle involved in the case at bar, and shows that in either situation the doctrine above applies. *Daily v. Clark Can Co.*, 128 *Mich.* 591, 87 *N. W.* 761.

*East v. Cayuga Lake Ice Co.* 21 *N. Y. Supp.* 887₁, which the court distinguishes from other New York cases relied upon by the defendant and points out that in these cases the ordering of any goods at all was optional, while in the above case there was no such option. In our case, we must, under our contract, order all our fibre from defendant.

In *Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co.*, 114 *Fed.* 77, 81, 52 *C. C. A.* 25, 57 *L. R. A.* 696, the case of *Bailey v. Austrian, supra,* is cited, and the court makes the same distinction as was pointed out by the case of *National Furnace Co., v. Keystone Mfg. Co., supra; Sheffield Furnace Co. v. Hull Coal Co.,* 101 *Ala.* 446, 14 *South.* 672; *Yellow Poplar Lumber Co. v. Rule,* 106 *Ky.* 455, 50 *S. W.* 685, 20 *Ky. Law Rep.* 2008; *Hickey v. O'Brian,* 123 *Mich.* 611, 82 *N. W.* 241, 49 *L. R. A.* 594, 81 *Am. St. Rep.* 227.

In *Minnesota Lumber Co. v. Whitebreast Coal Co.,* 160 *Ill.* 85, 43 *N. E.* 774, 31 *L. R. A.* 529, the court held that "requirements" as used in the contract did not mean that plaintiff was only to furnish such coal as defendant should require it to furnish, which meaning would make the contract bad for want of mutuality, but · the contract should be interpreted or construed in such a way as to make the obligations imposed by its terms mutually binding upon the parties unless such construction is wholly negatived by the language used. It cannot be said that defendant was not bound by the contract. It had no right to purchase coal elsewhere for use in its business. *McCall Co. v. Icks,* 107 *Wis.* 232, 83 *N. W.* 300.

In *Hoffman v. Maffioli,* 104 *Wis.* 631, 80 *N. W.* 1032, 47 *L. R. A.* 427, which is cited as authority for holding consumption contracts void for lack of mutuality, the court will note that there might be a difference between a contract to furnish all of defendant's requirements and a contract to furnish all defendant should require, the word "require" being given the meaning of "will," "want" or "wish." But the minority of the court main-

¹Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 66 Hun, 636.

tained what to us seems a commonsense view, and held that inasmuch as the literal sense of the language used did not constitute the contract a binding agreement, it became the duty of the court to construe it from the standpoint occupied by the parties when making it, and that so construed its plain purpose was that plaintiff should furnish all the stone that might be needed by defendant from time to time for the work upon said street in W. *Margaret Wells v. Francis Alexandre*, 130 *N. Y.* 642, 29 *N. E.* 142, 15 *L. R. A.* 218; *Smith v. Morse*, 20 *La. Ann.* 220.

Of course, whether the buyer is the offerer and seller is acceptor, or whether the seller is offerer and buyer is acceptor depends on the contract and how it was consummated. If it should appear to the court that in our contract the seller defendant was the offerer, and the buyer plaintiff was the acceptor, then under the authority of the above cases it would seem that the giving of the orders by plaintiff would be the acceptance. It would also follow that this imposed upon plaintiff not only the duty to pay for the same when delivered, but also the freedom of action of the plaintiff buyer as an acceptor was limited, for the plaintiff has, in effect, bound itself to buy whatever goods it does buy from the proposer or offerer defendant, and the plaintiff has parted with its right to buy the goods from whom it pleases.

A promise lacking mutuality at its inception becomes binding on the promisor after performance by the promisee. *Willetts v. Mutual Insurance Co.*, 45 *N. Y.* 45, 6 *Am. Rep.* 31.

In *Cooper v. Lansing Wheel Co.*, 94 *Mich.* 272, 274, 54 *N. W.* 39, 34 *Am. St. Rep.* 341, the court, in overruling the decision below, and in holding the declaration to be good, said that when the order is given by plaintiff and accepted by the defendant, the order and acceptance, when supplemented by filling of one or more orders becomes a valid and binding contract for the entire season.

Though the word "want" is here used, and would, under the Minnesota cases, be bad, yet the word "require" is also used, and this would be good even in Minnesota.

*Sheffield Furnace Co. v. Hull Coal & Coke Co.*, 101 *Ala.* 446, 14 *South.* 672, is not a consumption case, but it illustrates the rule

as applied to contracts in general. Also, *Fontaine v. Baxley*, 90 *Ga.* 416, 17 *S. E.* 1015; *Savannah Ice Delivery Co. v. American Refrigerator Transit Co.*, 110 *Ga.* 142, 35 *S. E.* 280; *Marie v. Garrison*, 83 *N. Y.* 14; *Cooper v. Lansing Wheel Co.*, 94 *Mich.* 272, 54 *N. W.* 39, 34 *Am. St. Rep.* 341, *supra*.

To show mutuality the obligation may be implied as well as expressed. Although on its face and by its express terms, the contract may be obligatory on one party only, yet if the intention of the parties and the consideration upon which the obligation is assumed is that there shall be a correlative obligation on the other side, the law will imply it.

*Bangor Furnace Co. v. Magill*, 108 *Ill.* 656, although not a consumption case, illustrates the above rule. *Jones v. Binford*, 74 *Me.* 439, although it is not a consumption case, is analogous thereto, and might be called an entire production case.

This case is very close to our case. In both cases it seems to us that where goods are delivered there arises an obligation on plaintiff to receive any pay, and the law certainly could properly imply a correlative obligation on defendant to deliver.          •

In *Stilwell v. Ocean Steam Ship Co.*, 5 *App. Div.* 212, 39 *N. Y. Supp.* 131, the court held that the communications between the parties constituted a mutually binding contract, by which the defendant agreed to furnish the rosin for transportation, and plaintiff agreed to transport it at the specified rates. *Miller v. Weld County*, 17 *Colo. App.* 120, 67 *Pac.* 347; *Jernigan v. Wimberly*, 1 *Ga.* 220; *Newmarket Mfg. Co. v. Coon*, 150 *Mass.* 566, 23 *N. E.* 380; *Mississippi River Logging Co. v. Robinson*, 69 *Fed.* 773, 16 *C. C. A.* 400.

It seems clear that the intention of the parties before the court was that if plaintiff needed any goods, he was to order them from the defendant alone, and the the defendant, when so ordered, was to send the goods to the plaintiff. And this is the implication which, we submit, should be put upon the contract under the above rule.

Although there is a lack of mutuality in the beginning, this may be cured by the other party subsequently binding himself also by promise or act. In the intermediate time the obligation of the promise is suspended, for until the performance of the condition of the promise, there is no consideration, and the promise is *nudum pactum*, but on the performance of the condition of the promise, it is clothed with a valid consideration which relates back to the promise, and it then becomes obligatory. *Goward v. Waters*, 98 *Mass.* 596. This is not a consumption contract, but there is an analogy between this and our case.

*Marie v. Garrison*, 83 *N. Y.* 14, is not a consumption contract but illustrates the above rule. Also *Sheffield Furnace Co. v. Hull Coal &c. Co.*, 101 *Ala.* 446, 14 *South.* 672; *Des Moines Valley R. R. Co. v. Graff*, 27 *Iowa*, 99, 1 *Am. Rep.* 256; *Cherry v. Smith*, 22 *Tenn.* (3 *Humph.*) 19, 39 *Am. Dec.* 150; *Truax v. P. W. & B. R. R. Co.*, 3 *Houst.* 233. This can only mean that, if at any time before the offer is withdrawn, the promisee or offeree can by accepting the offer make the contract mutual and binding on both.

*Savannah, etc., v. Refrigerator Transit Co.*, 110 *Ga.* 142, 35 *S. E.* 280, is not a strong case, in that the court was not passing upon the question of mutuality.

If we assume that the contract in the beginning lacked mutuality in that plaintiff was not bound, it nevertheless seems to us that this was cured by plaintiff subsequently binding himself by act, that is, by ordering the goods.

We have endeavored to answer the objection of lack of mutuality from all the angles of the question which might be urged by defendant as applicable to our contract.

The following cases have been urged as authority for holding our contract bad for lack of mutuality:

*Bailey v. Austrian*, 19 *Minn.* 535 (*Gil.* 465), a "want" contract and *Tarbox v. Gotzian*, 20 *Minn.* 139 (*Gil.* 122), a "require" contract. These cases have been distinguished by other courts wherever they have been cited. In both cases it was a question at the trial as to the validity of the contract. This comment applies to the Illinois, Wisconsin and Georgia cases.

*Higbie v. Rust*, 211 *Ill.* 333, 71 *N. E.* 1010, 103 *Am. St. Rep.* 204, was a case of "want", and not "consumption."

*Savannah Ice Delivery Co. v. American Refrigeration Co.*, 110 *Ga.* 142, 35 *S. E.* 280, was only *dicta*.

*Hoffman v. Maffioli*, 104 *Wis.* 631, 80 *N. W.* 1032, 47 *L. R. A.* 427. This was a case where the court was divided and the minority opinion was in favor of the contract being held to be good.

Not being able to procure the report, we cannot answer to the case of *American Refrigerator Transit Co., v. Chilton*, 94 *Ill. App.* 6.

In *Crane et al. v. Crane & Co.*, 105 *Fed.* 869, 45 *C. C. A.* 96 (1901), the upper court was passing on the construction put upon the contract by the lower court at the trial and not on demurrer. There is nothing in this case that would indicate that in our case we should allege one more word than we have already done.

In *Lima Locomotive & Machine Co. v. National Steel Castings Co.*, 155 *Fed.* 77, 83 *C. C. A.* 593, 11 *L. R. A.* (*N. S.*) 713 (1907), the lower court at the trial held the contract void for lack of mutuality. The upper court overruled the lower court. The contract used the word "requirement," and the court, as defendant has pointed out, did base its opinion on the fact that the plaintiff was engaged in an established business, and that defendant knew it.

In *Walker Mfg. Co. v. Swift & Co.*, 200 *Fed.* 529, 119 *C. C. A.* 27, 43 *L. R. A.* (*N. S.*) 730 (1912), the question was whether the clause "we take care of buyer's needs this year" entitled the buyer to expect seller to fill orders over 225,000 pounds. It turned on the interpreting of the above clause. The court rightly held' that the clause could not be extended to mean a consumption contract. We feel that at most it could amount to merely one of the "want" contracts discussed by the Minnesota cases.

In *T. W. Jenkins· & Co. v. Anaheim Sugar Co.*, 247 *Fed.* 958, 160 *C. C. A.* 658, *L. R. A.* 1918E, 293 (1918), we cannot find any language of the court which could be held to hold that plaintiff should allege that he was in an established business known to be such, which business usually had such and such a requirement known to defendant to be so.

In *Loudenback Fertilizer Co. v. Tenn. Phophsate Co.*, 121 *Fed.* 298, 58 *C. C. A.* 220, 61 *L. R. A.* 402 (1903), the court did right in upholding a demurrer to the declaration, for—

"The plaintiff, by the fact stated on the face of the declaration, shows that it committed the first substantial breach of the contract."

We wish again to call the court's attention to *Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co.*, 114 *Fed.* 77, 52 *C. C. A.* 25, 57 *L. R. A.* 696, which seems to plaintiff to contain the correct view held by federal courts.

Our contention is that plaintiff is not required to allege either the fact that plaintiff is engaged in an established business, or that plaintiff need allege surrounding circumstances showing this, or that defendant had a knowledge of plaintiff's business consumption.

It is clearly alleged in the declaration that defendant did sell to plaintiff the entire consumption of plaintiff. The nature of consumption contract is such that buyer must of necessity give orders from time to time indicating what his consumption is, and what his desires are.

The plaintiff has alleged a promise on part of defendant to deliver. Is not this equivalent to an allegation on part of defendant that defendant agreed to sell goods to plaintiff?

In count 1 we allege clearly that defendant sold to plaintiff all the consumption of plaintiff. In all the counts we allege that the plaintiff bargained for and agreed to buy of defendant "upon the said certain terms and conditions in the said written contract." Referring to the contract the only construction that can be put upon it is, in our opinion, that the defendant assumed a corresponding duty to fulfill the orders as and when they should be sent by plaintiff. This duty could only arise in case defendant has sold to plaintiff all the consumption of plaintiff.

This contract is a sale with deliveries to be made upon orders. We contend that from the nature of the contract it was not incumbent on plaintiff to allege that it did purchase or was ready to purchase its entire consumption from defendant. We have alleged in each count that plaintiff gave defendant certain orders,

and this is sufficient. It is further not incumbent on plaintiff to allege in so many words that the goods ordered by it were for its consumption.

A declaration, which shows the making of a contract between the plaintiff and defendant, and its violation by the defendant, and alleges the amount of damages resulting to the plaintiff from the breach, contains the essential elements of a good cause of action *ex contractu*. *Barber v. Cazalis*, 30 *Cal.* 92, 97; *Wolf v. Schofield*, 38 *Ind.* 175, 183; *Casey & Hedges Mfg. Co. v. Dalton Ice Co.*, 94 *Ga.* 407, 20 *S. E.* 333; *Parker v. Russell*, 133 *Mass.* 74; *Bryant v. Barton*, 32 *Neb.* 613, 49 *N. W.* 331; *Prindle v. Caruthers*, 12 *N. Y. Super. Ct.* (*5 Duer*) 670, *note; Payne v. Grant*, 81 *Va.* 164. We have clearly alleged the making of a contract and that the contract has been violated and have alleged the amount of damages claimed sufficient to constitute a cause of action. *Woodward v. Gould* (*C. C.*) 27 *Fed.* 182; *Bowen v. Emmerson*, 3 *Or.* 452; *Smith v. Boston C. & M. Railroad*, 36 *N. H.* 458; *Case v. Phœnix Bridge Co.*, 55 *N. Y. Super. Ct.* (23 *Jones & S.*) 25.

The declaration contains the allegation that the American Trading Company sent to the said National Fibre & Insulation Company numerous orders to be filled by the said National Fibre & Insulation Company according to its aforesaid agreement, and this is sufficient, for, although this is not an allegation that plaintiff purchased, it is an allegation that plaintiff did what was logical in this sort of contract, that is, indicated to defendant its desire to buy its (the plaintiff's) consumption. The consumption must, of necessity be piecemeal.

It may be true that plaintiff did not allege in so many words that the goods were ordered by it for its own consumption, but it does allege in each count at the place last referred to that it sent numerous orders to be filled by defendant "according to its aforesaid agreement," and that agreement was an agreement to buy of defendant the entire consumption of plaintiff.

Since we are seeking damages for nondelivery, we contend that it is not necessary to allege that the vulcanized fibre referred

to in said counts was ordered by the plaintiff for any particular market.

By not alleging that the goods were ordered for export we might preclude ourselves from recovering extra commission, but that does not prevent recovering damages for nondelivery of goods even though in fact we may have intended to export the goods.

Where from a breach of a contract the law would impute certain damages as the natural and logical consequence of the acts of said defendant, such damages need not be specially set out in the complaint, but are, upon a proper averment of such breach or . wrong, recoverable under a claim for damages generally. *Barber v. Cazalis*, 30 *Cal.* 92, 97; *Hadley v. Prather*, 64 *Ind.* 137; *Sunnyside v. Willamette Bridge Railway Co.*, 20 *Or.* 544, 26 *Pac.* 835; *Johnson v. Gilmore*, 6 *S. D.* 276, 60 *N. W.* 1070; *McCarthy v. Beach*, 10 *Cal.* 461; *Fagen v. Davison*, 9 *N. Y. Super. Ct.* (2 *Duer*) 153.

On the point of damages we cannot conceive how the orders being undated have any bearing. They are orders sent to the defendant by the plaintiff, and for dates the defendant may consult the orders. We have sufficiently designated them by giving them the numbers recognizable and accepted by both parties by their course of conduct.

The allegation of the orders need not show for what market the goods were intended, for they are, as stated above, sufficiently designated. To require us to plead fully each order would be requiring the pleading of purely matters of evidence.

The objection that the alleging of the orders does not show whether there was any advance or decline in prices as listed in the alleged agreement is not sustainable, for the orders are identified, and can be referred to by defendant, and, as stated above, to plead them in detail is to plead evidence.

In cases of damage for failure to deliver goods the defendant knows what the measure of damages is before he goes into trial. To inform the defendant further than has been done in this case is to practically set before defendant our proof before the trial begins. This might be advantageous to defendant, but is

contrary to the present rules of practice under which the trials of causes are conducted.

RICE, J. (delivering the opinion of the court). At the argument the defendant grouped the ten causes of demurrer as follows: (a) This agreement is void for uncertainty and want of mutuality. (b) It does not appear from the declaration that the vulcanized fibre therein referred to was ordered by the plaintiff for its own consumption during the period of one year from May 7, 1915, to May 7, 1916. (c) It does not appear from the declaration that the defendant ever sold or agreed to sell to the plaintiff any vulcanized fibre. (d) It does not appear from the declaration that the vulcanized fibre therein referred to was ordered by the plaintiff for the markets of China, Japan, the Philippines, Australia and South Africa, or any of said markets. (e) The schedule of orders attached to the declaration is insufficient to inform the defendant as to the nature and amount of the damages claimed by the plaintiff.

[1, 2] A very strict rule was declared in *Bailey v. Austrian*, 19 *Minn.* 535 (*Gil.* 465), and other early cases, respecting mutuality and certainty in contracts involving all of the buyer's requirements or consumption of goods purchased. But this rule has been somewhat modified on account of the growth and exigencies of business, and the later cases are rather uniform in holding that such contracts are not void for lack of mutuality and certainty, if in the light of surrounding circumstances the quantity contracted for can reasonably be ascertained or is capable of being approximately ascertained at the time of making the agreement. If the buyer has an established business which will require the commodities contracted for it is presumed the business will continue and under such circumstances the seller can approximately estimate the quantity of goods that will be required by the purchaser in his business. In such cases the law holds that there is mutuality of obligation and sufficient certainty respecting the quantity of goods that will be required by the buyer. In the case of *Bailey v. Austrian*, and in many other cases, it has been held in contracts where the purchaser agrees to buy such quantity of goods as he

may "want" in his business, that it is a mere option and as the purchaser is not required to take any of the goods contracted for the contract is void for want of mutuality or certainty. In a few cases the word "want" has been construed to mean require and in the latter cases the contracts have been upheld if the purchaser has an established business normally requiring commodities of the kind contracted for, and the quantity required in the business can be reasonably reduced to a certainty.

From an examination of the cases bearing upon the point, it may be stated that when the engagement of the buyer is merely to receive the goods he may want or order, or when his business is not established, and there is no reasonable probability that the business will contnue, or will require any substantial quantity of the goods covered by the agreement, the law holds that the engagement of the buyer is not an obligation but an option to take or not take any goods only as he may desire, and the contract is void for want of mutuality or certainty.

In *Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co.*, 114 *Fed.* 77, 52 *C. C. A.* 25, 57 *L. R. A.* 696, the court said:

"A promise to furnish, deliver, or receive specified articles at certain prices without any agreement to order or to accept any amounts or quantities of the articles, is without binding force or effect, because neither party is thereby bound to deliver or to accept any quantity or amount whatever. Such promises are void, because they lack one of the essential elements of an agreement, certainty, in the thing to be done. Contracts for the future supply during a limited time of articles which shall be required or needed or consumed by an established business, or used in the operation of certain steamships or other machinery, are no exceptions to this principle, because they fall under the rule, *Id certum est quod certum reddi protest.* But an accepted promise to furnish goods, merchandise, or other property, at certain prices, during a limited time, in such quantities as the acceptor shall require or want in his business, is without consideration and void, because the acceptor is not bound thereby to require or take any articles whatever under the supposed agreement. The line of demarcation between valid and invalid contracts here runs between the requirements of machinery, or of an established business, and the wants, desires, or requirements of the tentative vendee; and that because the former are either reasonably certain; or may be made so by evidence, while the latter are conditioned by the will of the tentative vendee alone, and are both uncertain and capable of infinite variation."

And in *Loudenback Fertilizer Co. v. Tenn. Phosphate Co.*, 121 *Fed.* 298, *C. C. A.* 220, 61 *L. R. A.* 402, the court used the following language:

"The only consideration for the promise of the defendant to sell is the obligation of the plaintiff to take its entire consumption of rock, and if the plaintiff is in fact at liberty to carry on its business by buying its acidulated rock when its price was less than the cost of making it, and thereby avoiding any actual consumption of crude rock, the contract is one which it may perform or not, as it pleases. 'The mutuality of the obligation is the very essence of all contracts founded upon mutual promises. Hence it follows, observes Pothier, 'that nothing can be more contradictory to such an obligation than an entire liberty in either of the parties making the promise to perform it or not, as he may please. An agreement giving such liberty would be absolutely void for want of obligation.' Addison on Contracts, 18. But we do not accept the plaintiff's interpretation of the agreement as correct. From all the surrounding circumstances it was intended to make the amount of rock which the plaintiff was bound to take as definite as possible by the statement of the average or normal consumption in the manner in which the factory was operated and by the agreement to take the entire consumption for a definite time at a stipulated price. Undoubtedly, there is a margin of allowance to be made for the contraction or expansion of the business incident to the varying conditions to which it is ordinarily subject. These conditions may be said to be within the contemplation of the parties when, instead of contracting for a definite amount, deliverable each year, the contract was made for 'all of the consumption' of the rock during a definite period of time. This contract gave the plaintiff liberty to use more or less, so long as it did not reduce or increase its consumption beyond the requirements of the usual fluctuations incident to the character of manufacturing carried on by it. This diminution or increase according to the reasonable fluctuations of such a business, if the result of the carrying on of the business with good faith in view of the obligations of the plaintiff to the defendant, constitutes the limit of the liberty allowed by the contract, and it is only in this respect that the question of good faith has any bearing upon the rights of the parties under the agreement."

And in *T. B. Walker Manf. Co. v. Swift & Co.*, 200 *Fed.* 529, 119 *C. C. A.* 27, 43 *L. R. A.* (*N. S.*) 730, it was said:

"But where the buyer has an established business, it is competent for the seller to contract with him to furnish him with such supplies as may be needed by him during a certain period; for in such case both parties would be bound, the one to furnish and the other to take what was needed. *   *   * Business necessities require contracts of this class, though more or less indefinite, to be upheld. Thus a hotel keeper could purchase his necessary supply of ice, a foundry all the coal needed for the season, or a furnace company its requirements of iron. *   *   * In such cases it can be ascertained with some degree of certainty the quantity needed, and the intention of the parties, it is presumed, was to contract in reference to such quantity. The business being established the purchase is an incident to it, and the purchase would be reasonably necessary, whether the prices of the article rose or fell. Such contracts, are, therefore, held valid."

[3] In the present case in the declaration the agreement in full is set out but the quantity contracted for is uncertain and there is no averment of surrounding circumstances, which may

make the quantity certain. It does not appear from the declaration what business the plaintiff is engaged in, or that it was engaged in any business. It is impossible to tell from the declaration whether the plaintiff is a manufacturer, retailer, factor, middleman or distributer. As the validity of agreements, such as in this case, depends on the probable permanence or nature of purchaser's business, and the ability and opportunity of the seller to make a reasonably correct estimate of the quantity of goods bargained for, the declaration in the present case cannot stand for there is nothing in the present declaration to even indicate the existence of such necessary facts.

[4] It is a recognized principle of law that the declaration must state a good cause of action, and it is hardly arguable that the averment of a written agreement which is not enforceable without proof of other facts not averred in the declaration does not constitute a good cause of action. It must necessarily appear from the declaration that both parties to the agreement were bound.

In *T. W. Jenkins & Co. v. Anaheim Sugar Co.*, 247 *Fed.* 958, 160 *C. C. A.* 658, *L. R. A.* 1918E, 293, the court said:

"The complaint charges that the contract was made with the knowledge on the part of the defendant of how plaintiff's business was conducted, and that plaintiff made contracts with customers for sale and delivery of sugar to be acquired under the contract with defendant, and knowing what the probable requirements of plaintiff would be."

And in *Berry v. Harper*, 4 *Gill & J.* (*Md.*) 467, it was said by the court:

"It is certainly necessary to set out in the declaration a contract binding on both parties, when a suit is instituted, to recover damages for the non-performance of the contract."

[5] It is contended by the plaintiff that the agreement must be regarded as valid and the defendant bound thereby because the defendant accepted orders for goods under the terms of the agreement. But the weight of authority seems to be that—

"Accepted orders for goods under such void contracts constitute sales of the goods thus ordered at the prices named in the contracts, but they do not validate the agreements as to articles which the one refuses to purchase or the other refuses to sell or deliver under the void contract, because neither party is bound to take or deliver any amount or quantity of the articles thereunder."

*Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co.*, 114 *Fed.* 77, 52 *C. C. A.* 25, 57 *L. R. A.* 696, and the many cases there cited in support of this principle.

Assuming that the agreement was not void for lack of mutuality and certainty, there can be no doubt that under the contract the defendant agreed to sell and was bound to sell and deliver to the plaintiff such amounts of fibre as it should require, for its consumption. Such was clearly the intention of the parties.

[6]  The contract is set out in full in the narr. and it is further alleged that the "American Trading Company sent to the National Fibre & Insulation Company numerous orders to be filled by the National Fibre & Insulation Company according to its aforesaid agreement" and we think it was not incumbent on the plaintiff to more specifically aver that the fibre was ordered by plaintiff for its own consumption during the year covered by the contract or that it was for the markets of China, Japan, the Philippines, Australia, or South Africa.

[7]  We are also of the opinion that the declaration sufficiently informs the defendant of the damages claimed by the plaintiff.

For the reasons stated in holding that the plaintiff has failed to plead a good cause of action against the defendant, in that he has not pleaded the facts and circumstances necessary to show the existence of a good and valid contract with the the defendant, we sustain the demurrer.