COLD BLAST TRANSP. CO. v. KANSAS CITY BOLT & NUT CO.

(Circuit Court of Appeals, Eighth Circuit.   March 10, 1902.)

No. 1,585.

**1.** CONTRACTS FOR FUTURE DELIVERY—VOID IF QUANTITY INDETERMINABLE.

A contract for the future delivery of personal property is void for want of consideration and mutuality if the quantity to be delivered is conditioned by the will, wish, or want of one of the parties, but it may be sustained if the quantity is ascertainable otherwise with reasonable certainty.

**2.** SAME—VALID IF MUTUAL AND QUANTITY SPECIFIED.

An accepted offer to furnish or deliver such articles of personal property as shall be needed, required, or consumed by the established business of the acceptor during a limited time is binding, and may be enforced, because it contains the implied agreement of the acceptor to purchase all the articles required by his business during this time from the party who makes the offer.

**3.** SAME—VOID FOR WANT OF MUTUALITY IF QUANTITY IS NOT SPECIFIED.

But an accepted offer to sell or deliver articles at specified prices during a limited time in such amounts or quantities as the acceptor may want or desire in his business, or without any statement of the amount or quantity, is without consideration and void, because the acceptor is not bound to want, desire, or take any.

**4.** VOID CONTRACTS FOR FUTURE DELIVERY VALID FOR GOODS ACTUALLY DELIVERED, BUT VOID AS TO THOSE NOT DELIVERED.

Accepted orders for goods under such void contracts constitute sales of the goods thus ordered, on the terms of the contracts; but they do

not validate the agreements as to articles which the one refuses to purchase or the other refuses to sell or deliver under the void contracts, because neither party is bound to take or deliver any amount or quantity of these articles thereunder.

5. CONTRACTS—INTENTION OF PARTIES CANNOT PREVAIL OVER TERMS OF.
 The intention of parties cannot be imported into a contract where its terms are plain and unambiguous, and they do not express it.

6. VERIFIED ACCOUNT PREVAILS OVER UNVERIFIED ANSWER.
 A verified account must be taken as true, against a denial and an offset pleaded in an unverified answer under Gen. St. Kan. 1897, c. 95, § 108.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Kansas.

This writ of error challenges a judgment on the pleadings in favor of the defendant in error, who was the plaintiff in the court below. For convenience, the plaintiff in error will be called the "defendant," and the defendant in error the "plaintiff," in this statement, and in the opinion which follows it. The plaintiff's petition stated a cause of action upon a verified account for $5,573.43. The defendant in its answer denied the averments of the petition, and pleaded a counterclaim for $5,341.94 damages for the failure of the plaintiff to deliver to the defendant after June 1, 1899, certain manufactured articles which it ordered and needed, and which the defendant alleged that the plaintiff was bound to deliver under an alleged written contract, which it averred was made and broken in this way: On October 27, 1898, the plaintiff sent to the defendant this letter:

"Kansas City, Mo., Oct. 27, '98.

"C. S. Ullman, Esq., Purchasing Agent Cold Blast Transportation Co., S. & S. Packing Co.—Dear Sir: We offer to deliver at your works, during six months from November 1st, 1898, the following materials at the prices stated:

Bar iron, $1.20 flat delivered by car, $1.25 by wagon.
Soft steel bars, $1.25 car load,          1.30 by wagon.
Machine bolts, 80 and 10 % discount.
U. S. Std. sq. nuts, $6.50 off.
 "    "    hex.   "      7.40 off.
70 % off extras for tapping.

—and will make in part payment No. 1 wrought scrap at $8.50 net ton, or arch bars and transoms at $10.50 net ton, or wrought iron car axles at $12.50 net ton, delivered your works; the quantity of scrap to be taken not to exceed the weight of materials sold to you.

"Yours truly,                                    R. C. Howes, Secy.

"With option of renewal for 6 months from June 1st, 1899.

"The K. C. Bolt & Nut Co.,
"R. C. Howes, Sec'y."

On receipt of the proposition contained in this letter the defendant accepted it; and between November 1, 1898, and June 1, 1899, it ordered, the plaintiff delivered, and the defendant paid for, nuts, bolts, and bars of the character specified in the letter, under the terms and at the prices there stated. Before June 1, 1899, the defendant notified the plaintiff that it exercised its option to renew the contract evidenced by the letter and acceptance. Between June 1, 1899, and December 1, 1899, the defendant ordered of the plaintiff nuts, bolts, and bars of the character described in the letter, which it needed in its business, which the plaintiff refused to deliver, and which the defendant was forced to purchase of others at prices which, in the aggregate, exceeded those specified in the alleged contract between the parties by $5,341.94. In addition to the counterclaim, which has been stated, the defendant pleaded an offset of $2,727.18, founded on the alleged fact that the plaintiff had charged that amount in excess of the prices specified in the alleged contract for nuts, bolts, and bars which it had furnished to the defendant on its orders between June 1, 1899, and December 1, 1899. The

answer of the defendant was not verified. There was a reply to it. But upon this review of a judgment upon the pleadings against the defendant the averments of the reply become immaterial, because the allegations of the answer stand admitted, and those of the reply which assert new matter are denied. The only question for consideration is whether the answer stated any legal defense, counterclaim, or offset to the cause of action pleaded by the plaintiff.

N. H. Loomis, R. W. Blair, and O. L. Miller, for plaintiff in error.
W. Littlefield, D. S. Alford, and Ord Clingman, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The main question in this case is whether or not the answer states a legal counterclaim. The basis of this counterclaim is that the plaintiff failed to deliver nuts, bolts, and bars between June 1, 1899, and December 1, 1899, under the alleged renewal of the so-called contract of October 27, 1898. This supposed contract consisted of a written offer to deliver manufactured articles in unnamed quantities at certain specific prices at any time between October 27, 1898, and June 1, 1899, and the acceptance of that offer, without more. The answer contains no averment that either the plaintiff or the defendant paid any consideration or performed any act to induce the contract, except the remitting of the offer by the plaintiff, and the sending of its acceptance by the defendant. There was therefore in the inception of this alleged agreement no consideration for the promise of either of the parties to it, except the promise of the other. Neither the letter nor the acceptance names any quantity or amount of the articles specified that is to be delivered or received under it. The plaintiff does not agree to deliver, nor does the defendant contract to receive or pay for, any quantity or amount whatever of the articles named in the writings. A promise is a good consideration for a promise. But no promise constitutes such a consideration which is not obligatory upon the party promising. It must bind the promisor, so that the promisee may maintain an action for its breach, or it is without legal effect and void. A promise to furnish, deliver, or receive specified articles at certain prices, without any agreement to order or to accept any amounts or quantities of the articles, is without binding force or effect, because neither party is thereby bound to deliver or to accept any quantity or amount whatever. Such promises are void, because they lack one of the essential elements of an agreement,—certainty in the thing to be done. Contracts for the future supply during a limited time of articles which shall be required or needed or consumed by an established business, or used in the operation of certain steamships or other machinery, are no exceptions to this principle, because they fall under the rule, "Id certum est quod certum reddi potest." But an accepted promise to furnish goods, merchandise, or other property, at certain prices, during a limited time, in such quantities as the acceptor shall require or want in his business, is without consideration and void, because the acceptor is not bound thereby to require or take

any articles whatever under the supposed agreement. The line of demarkation between valid and invalid contracts here runs between the requirements of machinery, or of an established business, and the wants, desires, or requirements of the tentative vendee; and that because the former are either reasonably certain, or may be made so by evidence, while the latter are conditioned by the will of the tentative vendee alone, and are both uncertain and capable of infinite variation. It is, however, contended that, even if this alleged contract was void in its inception, it became valid and binding upon the parties when the defendant ordered, and the plaintiff delivered and received payment for, a large quantity of the manufactured articles at the prices and in accordance with the terms of the letter of October 27, 1898. But the fatal defect in the alleged contract was that the plaintiff was not bound to deliver, nor the defendant to take and pay for, any specific quantity of the offered articles. As to all undelivered articles, that defect still inheres in the agreement. The plaintiff is not bound to deliver, nor the defendant to take and pay for, any articles that have not been delivered, because there is no specification in the alleged contract of the amount or quantity which the one is to deliver and the other to receive. The orders for these articles which have been filled by their delivery specified the amounts so delivered, and thus effected contracts for their sale. But these orders and deliveries have in no way remedied the fatal defect of the offer and acceptance regarding those articles which the defendant has ordered, and the plaintiff has refused to deliver. The defendant never agreed to order or to pay for any quantity of these undelivered articles. If it had refused to order and take them, no action could have been maintained for its failure, because no court could have determined what amount it was required to take. Nor can an action be better maintained against the plaintiff for its failure to deliver the articles which the defendant has ordered, because the offer contains no measure of the quantity which the plaintiff was to deliver, and consequently no agreement on its part to deliver any whatever. As the contract was void in its inception, and has continued to be void as to all undelivered goods, the notice of its renewal which was delivered by the defendant was futile, since the renewal of a void contract but continues its invalidity.

It is said that the intention of the parties was to make an agreement that the plaintiff should sell and deliver, and the defendant should buy, all the articles of the character specified in the offer which should be needed or required by its business between October 27, 1898, and June 1, 1899; that the purpose of the construction and interpretation of contracts is to ascertain the intention of the parties, and that this contract should be interpreted to effect this intent. The answer is that, while ambiguous terms and doubtful stipulations may be interpreted to carry out the intention of the parties when they fairly evidence it, their secret intention cannot be imported into contracts whose terms and meaning are plain and unambiguous, and do not express it. It is only the intention of the parties which the contract itself expresses that the courts may enforce. In the case at bar the offer of the plaintiff is nothing but a price list. The acceptance

of the defendant contains no agreement to buy any of the articles specified in the list, and there is no ambiguity in the terms, or doubt in the meaning, of the writings in issue. To give effect to the intention of the parties which the defendant now alleges would be to ascribe to them a purpose, and to make and enforce for them a contract, which their writings neither express nor suggest; and this is beyond the province of the courts. Railway Co. v. Bagley, 60 Kan. 424, 431, 56 Pac. 759; Woolsey v. Ryan, 59 Kan. 601, 54 Pac. 664; Davie v. Mining Co., 93 Mich. 491, 53 N. W. 625, 24 L. R. A. 357; Vogel v. Pekoc, 157 Ill. 339, 42 N. E. 386, 30 L. R. A. 491; Campbell v. Lambert, 36 La. Ann. 35, 51 Am. Rep. 1; Turnpike Co. v. Coy, 13 Ohio St. 84; Stensgaard v. Smith, 43 Minn. 11, 44 N. W. 669, 19 Am. St. Rep. 205.

The rules applicable to contracts of this class may be thus briefly stated: A contract for the future delivery of personal property is void, for want of consideration and mutuality, if the quantity to be delivered is conditioned by the will, wish, or want of one of the parties; but it may be sustained if the quantity is ascertainable otherwise with reasonable certainty. An accepted offer to furnish or deliver such articles of personal property as shall be needed, required, or consumed by the established business of the acceptor during a limited time is binding, and may be enforced, because it contains the implied agreement of the acceptor to purchase all the articles that shall be required in conducting his business during this time from the party who makes the offer. Wells v. Alexandre, 130 N. Y. 642, 29 N. E. 142, 15 L. R. A. 218; Minnesota Lumber Co. v. Whitebreast Coal Co. (Ill. Sup.) 43 N. E. 774, 31 L. R. A. 529; Parker v. Pettit, 43 N. J. Law, 512. But an accepted offer to sell or deliver articles at specified prices during a limited time in such amounts or quantities as the acceptor may want or desire in his business, or without any statement of the amount or quantity, is without consideration and void, because the acceptor is not bound to want, desire, or take any of the articles mentioned. Bailey v. Austrian, 19 Minn. 535 (Gil. 465); Tarbox v. Gotzian, 20 Minn. 139 (Gil. 122); Railway Co. v. Bagley, 60 Kan. 424, 433, 56 Pac. 759; Oil Co. v. Kirk, 15 C. C. A. 540, 68 Fed. 791; Crane v. C. Crane & Co., 45 C. C. A. 96, 105 Fed. 869. Accepted orders for goods under such void contracts constitute sales of the goods thus ordered at the prices named in the contracts, but they do not validate the agreements as to articles which the one refuses to purchase, or the other refuses to sell or deliver, under the void contracts, because neither party is bound to take or deliver any amount or quantity of these articles thereunder. Crane v. C. Crane & Co., 45 C. C. A. 96, 105 Fed. 869; Oil Co. v. Kirk, 15 C. C. A. 540, 68 Fed. 791; Campbell v. Lambert, 36 La. Ann. 35; Railway Co. v. Mitchell, 38 Tex. 85, 95; Ashcroft v. Butterworth, 136 Mass. 511, 514; Drake v. Vorse, 52 Iowa, 417, 3 N. W. 465; Thayer v. Burchard, 99 Mass. 508, 520; Hoffmann v. Maffioli (Wis.) 80 N. W. 1032, 1035, 47 L. R. A. 427; Railroad Co. v. Jones, 53 Ill. App. 431, 437; Rafolovitz v. Tobacco Co. (Sup.) 25 N. Y. Supp. 1036.

Tested by these rules, the accepted offer of October 27, 1898, was void in its inception for want of consideration and mutuality. No quantity of nuts, bolts, or bars was named in the offer or in the

acceptance. The defendant was not bound to order, to receive, or to pay for any of the articles named in the offer; and there was therefore no consideration for the offer itself, and no mutuality in the supposed agreement. The orders which were made and filled prior to June 1, 1899, constituted valid contracts for the purchase and sale of the goods so ordered at the prices named in the offer. But they effected no agreement on the part of the defendant to order, or on the part of the plaintiff to deliver, any other goods under the offer, because the amount of goods whose delivery was contemplated was still unnamed. The defendant was not legally bound to order, to receive, or to take any articles which it had not ordered, so that there was still no consideration and no mutuality in the contract as to any articles which the defendant had not ordered, or which the plaintiff had not delivered. The refusal of the plaintiff to honor the orders of the defendant was therefore no breach of any valid contract, and formed no legal cause of action for the counterclaim.

It is specified as error that the court refused to permit the defendant to amend its answer at the trial so as to allege that it orally, and by the written contract, agreed to purchase all of the goods of the kinds mentioned in the offer of October 27, 1898, "that it might use or desire to use during the times mentioned in the contract"; but no argument is presented in support of this specification, and no plausible reason for its assignment is suggested. If the amendment had been allowed, the alleged contract would still have been void, because, under the agreement stated in the amendment, the defendant would not have been bound to desire to use, or to use, any of the articles mentioned in the price list, and there would still have been no mutuality in the contract. Moreover, the granting of the motion was discretionary with the court below, and it was made so late that it would have been no abuse of discretion to have denied it if the amendment had been material. It was properly denied because the amendment was immaterial, because if it had been allowed the answer would not have stated facts sufficient to constitute a legal counterclaim, and because its allowance was discretionary, and there was no abuse of that discretion.

In addition to the counterclaim which has been considered, the answer contained a denial of the allegations of the complaint, and an offset against the plaintiff's claim for the sum of $2,727.18, which the defendant alleged the plaintiff had charged it in excess of the prices specified in the offer of October 27, 1898, for goods delivered subsequent to June 1, 1899. But the statutes of Kansas provide that:

"In all actions, allegations of the execution of written instruments and indorsements thereon, of the existence of a corporation or partnership, or of any appointment or authority, or the correctness of any account duly verified by the affidavit of the party, his agent or attorney, shall be taken as true unless the denial of the same be verified by the affidavit of the party, his agent or attorney." Gen. St. Kan. 1897, c. 95, § 108.

The correctness of the account set forth in the plaintiff's petition was verified by affidavit. The denial in the answer and the offset which it pleads challenge the correctness of this account. But the answer was not verified. Consequently, under the express provisions

of the statute which has been quoted, the verified account must be taken as true, and neither the denial nor the offset can be considered under the pleadings.

The judgment below was right, and it is affirmed.