## HUTCHINSON GAS & FUEL CO. v. WICHITA NATURAL GAS CO.

(Circuit Court of Appeals, Eighth Circuit. August 17, 1920.)

No. 5535.

1. **Injunction** ☞57—**Restraining breach of contract governed by same rules as specific performance.**

An injunction against the breach of a contract is a negative decree of specific performance, and as a general rule the granting of the injunction is governed by the same principles, rules, and practice as apply to specific performance.

2. **Specific performance** ☞32 (1)—**Contract not mutually binding is not enforced.**

As a general rule specific performance of a contract will not be decreed by a court of equity in favor of the party against whom that court cannot compel its performance.

3. **Specific performance** ☞32 (3)—**Contract for delivery of personalty dependent on will of one party not mutual.**

A contract for the delivery of personal property lacks mutuality, and cannot be specifically enforced, where the quantity delivered, if any, depends on the will or desire of one party, though it may be enforced if the quantity may be determined, as where it is for the delivery of all articles needed in a person's business.

4. **Gas** ☞13 (1)—**Supplemental contract supersedes inconsistent provisions in sections not expressly modified.**

Where a contract to supply to a distributing company the natural gas it needed for distribution to the inhabitants of a city, which provided that the supply company furnish gas only to the distributing company, and the distributing company should take gas only from the supply company, was modified by a supplemental contract, which eliminated the exclusive clauses, but provided that all other provisions of the contract remain in effect, the supplemental contract also eliminated the agreement of the distributing company to take the gas it needed for the inhabitants from the supply company, contained in a provision not expressly modified.

5. **Injunction** ☞57—**Modified contract for supply of gas held not enforceable, because supply depended on distributor's will.**

A breach of a contract whereby defendant agreed to supply natural gas at a stated rate to complainant for distribution to its customers will not be enjoined, where the contract had been modified, so that the distributing company was no longer required to get its gas from complainant, and the contract as modified was not mutual.

6. **Injunction** ☞57—**If a substantial part of consideration for contract not mutual is unperformed, breach will not be enjoined.**

Where a contract between a gas supply company and a distributing company required the latter to construct a distributing system for delivery of gas to its customers, and to sell it at a fixed rate, a proportion of which was to be paid to the supply company, the distribution of gas furnished by the supply company at the stated rate was a substantial part of the consideration, so that breach of the contract by the supply company could not be enjoined, after the distributing company had completed its system, where there was no obligation by the distributing company to get its gas from the supply company.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. Partnership ⬯10—Supplying and distributing companies held not partners to supply gas.**

A contract whereby one corporation agreed to deliver to another at the city limits a supply of natural gas, and the second agreed to distribute the gas to the inhabitants of the city and pay the former a proportion of its gross receipts, did not make the two corporations partners for the supplying of gas to the city.

**8. Gas ⬯14(1)—Contract held not to require furnishing gas from new field at old rate.**

A contract whereby a corporation agreed to supply natural gas from designated fields to a distributing company at a stated rate, so long as the supply from those fields was available, not exceeding 20 years, does not require it to supply gas from more distant fields after the specified fields had become exhausted.

**9. Contracts ⬯170(1)—Construction by parties does not control clear meaning.**

The rule that courts follow the interpretation of contract adopted by the parties thereto is advisory, not mandatory, and is inapplicable, where the terms of the contract are clear and certain.

**10. Gas ⬯13(1)—Furnishing gas from different field at old rate not construction that contract required it.**

The fact that a gas supply company furnished to a distributing company for several years gas from a field other than that specified in the contract is not a construction by the parties that the contract required the furnishing of gas from new fields after the exhaustion of those specified.

**11. Contracts ⬯170(2)—Continuing service after term imposes no obligation for future continuance.**

The fact that a party to a contract had continued to render the service at the contract rates after his obligation to do so had expired under the contract does not impose on him any obligation to continue thereafter to render such services.

**12. Injunction ⬯118(1)—Where condition precedent to contract is pleaded performance of condition must be also.**

Where the bill set out a contract which by its terms required defendant to furnish gas to complainant so long as designated fields produced the gas, and also contained a notice of refusal to furnish gas for the stated reason that the specified fields were exhausted, the bill was properly dismissed for want of equity for failure to allege the production of gas from the stated fields.

Carland, Circuit Judge, dissenting in part.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit by the Hutchinson Gas-& Fuel Company against the Wichita Natural Gas Company. From a decree dismissing the bill, complainant appeals. Affirmed.

This is an appeal of the Hutchinson Company, a gas distributing corporation, from a decree of dismissal of its bill in equity against the Wichita Company, a natural gas producing corporation, to enjoin it from raising its rate for the sale of its gas, and from ceasing to supply it at a rate specified in the contracts between the two companies. The bill discloses these facts:

The Wichita Natural Gas Company is engaged in the business of producing and selling natural gas, and the Hutchinson Gas & Fuel Company is engaged in the business of selling natural gas to consumers in the city of Hutchinson, in the state of Kansas. In June, 1906, the Wichita Company controlled an acreage of gas leases with a number of gas wells thereon in the gas belt of Kansas, and J. O. Davidson was authorized by an ordinance of the city of

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Hutchinson for 20 years from March 29, 1906, to maintain a gas plant, to lay and use mains and pipe lines in the streets of that city, and through them to supply the inhabitants of the city with natural and artificial gas. He had constructed or was about to construct a complete system of distributing mains and pipes in that city, to comply with the terms of the ordinance and to supply the inhabitants of the city with gas.

Thereupon, on June 19, 1906, he made a contract with the Wichita Company to the effect that the Wichita Company would lay a pipe line for conveying natural gas from its gas fields in the gas belt of Kansas to a point at the city limits of Hutchinson, where it would maintain a reducing and regulating station; that Davidson would lay his distributing pipes and connect them to the pipes of the gas company at the reducing station; that all these things should be done by December 31, 1906; that thereafter, as long as the wells and pipes were capable of so doing, not exceeding 20 years, the gas company would deliver sufficient natural gas to Davidson at its reducing station to meet the demands for domestic consumption thereof by the inhabitants of the city, and Davidson would receive into his pipes, and sell, deliver, and collect for this gas; that it should be sold to consumers at the rate of 30 cents per 1,000 cubic feet; that Davidson should pay over to the Wichita Company, for the gas it delivered, two-thirds of the gross sales thereof; that the Wichita Company made Davidson its exclusive agent; that the Wichita Company would not sell or deliver any of its gas to any other party in Hutchinson, and Davidson would not sell or distribute in that city any natural gas other than that of the Wichita Company.

On November 15, 1906, with the consent of the Wichita Company, Davidson sold and conveyed his interest in the ordinance, in the distributing plant, and in his contract with the Wichita Company to the Hutchinson Gas & Fuel Company, which assumed his liabilities thereunder. The distributing plant and the pipe line were constructed as agreed, and the Wichita Company and the Hutchinson Company proceeded with the delivery and sale of the gas under the Davidson contract until January 2, 1912, when they made a supplemental agreement to the effect that (1) the Hutchinson Company should not thereafter have the exclusive agency of the Wichita Company to distribute, market, or sell its natural gas to the city of Hutchinson or to its inhabitants, but the Wichita Company might appoint and use other agents for that purpose; (2) that the Hutchinson Company should on that date cease to be bound by its agreement not to handle, distribute, market, or sell within the city of Hutchinson the natural gas of any other party than the Wichita Company, and that it might thenceforth handle, distribute, market, and sell within that city the natural gas of any party other than the Wichita Company; and (3) that "nothing in this supplemental agreement is intended or shall be construed to change, alter, or modify any or other of the terms of the said-contract entered into between the first party herein and the said J. O. Davidson, on the 19th day of June, 1906."

The Wichita Company had laid its pipe line and built its reducing station, the Hutchinson Company had laid its lines and pipes and completed its distributing system, they had connected their pipes and commenced to deliver natural gas through them, and to sell it under the contract of 1906, as early as 1907, and had continued so to do thereafter, so that when the supplemental contract was made all the covenants of the parties under the contract of 1906 had been performed, except the executory contract relating to the delivery, distribution, and sale of the natural gas of the Wichita Company subsequent to January 2, 1912. They continued to handle and sell the natural gas of that company in the same way as theretofore until the early part of 1919, when the Wichita Company notified the Hutchinson Company that the supply of gas from the Kansas wells and fields described in the original contract had been exhausted; that it was compelled to obtain its gas from more distant fields in Oklahoma at a greatly increased expense; that it could not and would not henceforth furnish its natural gas to the Hutchinson Company unless a charge of 45 cents, instead of 30 cents, per 1,000 cubic feet for natural gas for domestic purposes was made to and collected from the consumers of natural gas in Hutchinson; that the contract between them

did not require it to furnish gas from other than the Kansas fields and belt described therein; that the contract was illegal; and that the Wichita Company would cease to supply natural gas thereunder at an early date unless the 45-cent rate was adopted and used.

Thereupon the Hutchinson Company filed the bill in equity in this case against the Wichita Company, in which it alleged the facts which have been stated, and prayed for a temporary and a permanent injunction "restraining the defendant from violating the provisions of said contract and from refusing to perform the same," from increasing the price of gas to the Hutchinson Company, from disturbing that company's rights to market and deliver natural gas to the consumers in Hutchinson as the agent of the Wichita Company, and for other like relief. A restraining order was issued against the Wichita Company, and thereupon it moved to dismiss the bill, because it did not state any equity sufficient to entitle it to the relief against that company for which the complainant prayed. After a hearing and consideration of this motion the court rendered a decree of dismissal of the bill on its merits for want of equity and dissolved the restraining order. From the decree of dismissal of the bill the Hutchinson Company has appealed.

H. L. McCune, of Kansas City, Mo. (McCune, Caldwell & Downing, of Kansas City, Mo., on the brief), for appellant.

Joseph G. Carey, of Wichita, Kan., and Robert A. Brown, of St. Joseph, Mo. (John H. Brennan, of Bartlesville, Okl., R. R. Vermilion, Earle W. Evans, and W. F. Lilleston, all of Wichita, Kan., and H. O. Caster, of Bartlesville, Okl., on the brief), for appellee.

Before SANBORN and CARLAND, Circuit Judges, and TRIEBER, District Judge.

SANBORN, Circuit Judge (after stating the facts as above). The relief sought by the Hutchinson Company in this case is an injunction against the violation of any of the terms of the contract of June 9, 1906, and of any of the terms of any contract resulting from the supplemental contract of January 2, 1912.

[1] An injunction against the breach of a contract is a negative decree of a specific performance thereof, and the general rule is that the power and duty of a court of equity to grant the former are governed by the same principles, rules, and practice as are its power and duty to grant the latter relief. Shubert et al. v. Woodward et al., 167 Fed. 47, 53, 92 C. C. A. 509, 515; Pantages v. Grauman et al.; 191 Fed. 317, 323, 112 C. C. A. 61, 67; 2 Pomeroy's Equity Jurisprudence (3d Ed.) § 1341; General Electric Co. v. Westinghouse Electric & Mfg. Co. (C. C.) 144 Fed. 458, 463. The question here is, therefore: Was the court below in error in its conclusion that, under the rules and principles of equity applicable to suits for the specific performance of contracts, it was not its duty, in view of the two contracts in issue, to compel the Wichita Company to continue to supply the Hutchinson Company until December 31, 1926, with natural gas for two-thirds of the 30 cents per 1000 cubic feet named in the contracts?

The contract of 1906, if it was not violative of the anti-trust laws of Kansas (Keene Syndicate v. Wichita Gas, Electric Light & Power Co., 69 Kan. 284, 76 Pac. 834, 67 L. R. A. 61, 105 Am. St. Rep. 164, 2 Ann. Cas. 949; Landon v. Public Utilities Commission of Kansas [D. C.] 245 Fed. 954, 955), was a valid and enforceable agreement. But, if

it is not obnoxious to the anti-trust legislation, when it is read with the supplemental contract of 1912, and their provisions are carefully studied and compared, the question of the mutuality of the new agreement which resulted from the adoption of the agreement of 1912 arises, persists, and will not down; for "an agreement, when changed by the mutual consent of the parties, becomes a new agreement, which takes the place of the old, and consists of the new terms and as much of the old agreement as the parties have agreed shall remain unchanged." 13 C. J. § 615.

[2, 3] It is the general rule that specific performance of a contract will not ordinarily be decreed by a court of equity in favor of a party against whom that court cannot efficiently compel its performance. The obligation and the remedy must be mutual. Shubert v. Woodward, 167 Fed. 47, 55, 92 C. C. A. 509, 517; Marble v. Ripley, 10 Wall. 339, 358, 19 L. Ed. 955. So the question becomes: Can a court of equity efficiently compel the Hutchinson Company to perform the contract which counsel for that company contend exists between it and the Wichita Company, in view of the established rule that "a contract for the future delivery of personal property is void, for want of consideration and mutuality, if the quantity to be delivered is conditioned by the will, wish, or want of one of the parties; but it may be sustained if the quantity is ascertainable otherwise with reasonable certainty"? Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co., 114 Fed. 77, 81, 52 C. C. A. 25, 29, 57 L. R. A. 696; Wells v. Alexandre, 130 N. Y. 642, 29 N. E. 142, 15 L. R. A. 218; Woerheide v. Barber Asphalt Paving Co., 251 Fed. 196, 204, 163 C. C. A. 352, 360; Northern Iowa Gas & Elect. Co. v. Inc. Town of Luverne (D. C.) 257 Fed. 818, 821; Transcontinental Petroleum Co. v. Interocean Oil Co., 262 Fed. 278, 280 (C. C. A., dated December 12, 1919).

The answer to this question must be found in the true meaning of the terms of the new agreement. Counsel for the Hutchinson Company in their reply brief write that the law is correctly stated in Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co., 114 Fed. 77, 81, 52 C. C. A. 25, 29, in these words:

"An accepted offer to furnish or deliver such articles of personal property as shall be needed, required, or consumed by the established business of the acceptor during a limited time is binding, and may be enforced, because it contains the implied agreement of the acceptor to purchase all the articles that shall be required in conducting his business during this time from the party who makes the offer. * * * But an accepted offer to sell or deliver articles at specified prices during a limited time in such amounts or quantities as the acceptor may want or desire in his business, or without any statement of the amount or quantity, is without consideration and void, because the acceptor is not bound to want, desire, or take any of the articles mentioned."

And counsel add:

"If plaintiff's construction is proper, the first sentence of the foregoing quotation applies; if defendant's construction is correct, then the second sentence is in point."

They insist that the new agreement brings this case under the first sentence of the quotation. They rely upon these terms of the contract

of 1906 to establish this position. The second paragraph of that contract contains a covenant of the Wichita Company to supply during the term of the contract—

"natural gas in a volume sufficient to maintain a pressure not to exceed four to eight ounces to the square inch on the low-pressure lines of the said system in the said city, and at all times fully meet the demand for all purposes of domestic consumption as provided for in this contract."

The third paragraph provides that the Wichita Company shall not be liable for any loss or damage to the Hutchinson Company from any shortage or interruption in the supply of gas—

"arising from any cause whatever; but the gas company agrees to use diligence in furnishing an adequate supply of merchantable gas for all the domestic consumers the party of the second part may secure within the corporate limits of the said city of Hutchinson."

The fourth paragraph contains the grant to the Hutchinson Company of the exclusive agency to distribute, sell, and deliver the Wichita Company natural gas in Hutchinson, and the covenant of the latter not to distribute or sell to other agents any gas for domestic purposes therein. In the fifth paragraph the Hutchinson Company agrees that it—

"will actually begin to receive the said gas from the said gas company and distribute and sell the same through his said system to domestic consumers thereof within the said city on or before December 31, 1906."

Paragraph 11 contains a covenant of the Hutchinson Company that it will not, "during the term of this agency, handle, distribute, market, or sell the natural gas of any" party other than the Wichita Company, in the city of Hutchinson. The supplemental contract contains five sentences of recitals which precede the terms of the agreement. One of them is that by the fourth paragraph of the contract of 1906 the Wichita Company granted the exclusive agency to the Hutchinson Company to distribute and sell its natural gas in Hutchinson, and another is that in the eleventh paragraph the Hutchinson Company covenanted not to sell in the city of Hutchinson the natural gas of any one but the Wichita Company. The supplemental contract of 1912 provided: (1) That the exclusive agency of the Hutchinson Company should cease on January 2, 1912, and the Wichita Company might thereafter appoint other agents to distribute and sell its gas in Hutchinson; (2) that the covenant of the Hutchinson Company not to sell, market, or distribute the natural gas of anybody except the Wichita Company in Hutchinson should cease on January 2, 1912, and thereafter it might handle, market, distribute, and sell the natural gas of others therein; and (3) that nothing in the supplemental agreement "is intended or shall be construed to change, alter, or modify any or other of the terms of the said contract" of June 19, 1906.

[4] Counsel for the Hutchinson Company present an ingenious argument that the effect of the new contract resulting from the agreement of 1912 is (1) a covenant of the Wichita Company to use due diligence to furnish the Hutchinson Company as its agent such natural gas as shall be needed, required, and consumed by the established busi-

ness of that company during the remainder of the term; and (2) a covenant of the Hutchinson Company to receive, distribute and sell that gas during the term. They contend that the provision of the supplemental agreement that it shall not be construed to alter or modify "any or other of the terms" of the contract of 1906 means any other paragraphs of the latter contract than the fourth and the eleventh, which treat of the exclusive agency and are specifically referred to in the preamble of the supplemental agreement. But the court is unable to find anything of that nature in the body of the agreement itself. That agreement is now a part of the new contract, which supersedes the old one, and it is the new part of that new agreement, which, as the evidence of the last meeting of the minds of the parties, must prevail over any inconsistent part of the new agreement which was taken from the old one. The agreement of 1912 was made for the express purpose of modifying the old one in this case, and it must be given that effect. It expressly provides that the Wichita Company may sell and deliver its gas through other agents than the Hutchinson Company to the inhabitants of the city of Hutchinson. Under that provision it may, through other agents, sell and deliver its gas to any or to all its inhabitants, and thus supply the demands of a part or of all of them for natural gas for domestic purposes, and its contract to deliver to the Hutchinson Company its gas in sufficient quantities to supply the demand for domestic purposes, or to use diligence so to do, is rendered so indefinite as to be futile.

Again, the old contract contained the provision that the Hutchinson Company would begin December 31, 1906, and continue as long as the gas field and supply line of the Wichita Company was capable of supplying the gas, not exceeding 20 years, to receive the gas of the Wichita Company, and to sell and distribute it to domestic consumers in Hutchinson. But the supplemental agreement provides that after January 2, 1912, it may handle, distribute, market, and sell to the inhabitants of Hutchinson the natural gas of any person, party, or corporation other than the Wichita Company. It may therefore, under the present contract, sell and deliver to its consumers, the inhabitants of Hutchinson, the natural gas of others than the Wichita Company to an amount sufficient to supply a part or all of the demand of its established business in that city. The quantity it may take of the Wichita Company is conditioned by the wish or will of the Hutchinson Company, is neither certain nor ascertainable, and it is not bound by the new agreement to take any. To be more specific, in paragraph 3 of the old contract, now a part of the new agreement, the Wichita Company agrees to use diligence "in furnishing an adequate supply of merchantable gas for all the domestic consumers the party of the second part may secure within the corporate limits of the city of Hutchinson," while by the second paragraph of the supplemental agreement the parties expressly contract that the Hutchinson Company may, after January 2, 1912, "handle, distribute, market, and sell" to its consumers, or any others in Hutchinson, the natural gas of others than the Wichita Company. It may therefore, by the express terms of the new agreement, lawfully take any or all the gas for its consumers from other than the Wichita

Company; and after January 2, 1912, it has not been and is not legally bound to take any of it from the Wichita Company.

[5] This review of the specific provisions and relations of the two contracts leaves no doubt that the effect of the agreement of 1912 was not limited to the modification of the paragraphs 4 and 11 of the contract of 1906. The purpose and the intended and actual effect of that agreement was to release the Wichita Company from its contract to furnish to the Hutchinson Company, and the Hutchinson Company from its agreement to take from the Wichita Company all the natural gas requisite to supply the demand for such gas for domestic consumption in the city of Hutchinson, and to leave the Wichita Company free to sell its gas to other agencies to supply that demand, and the Hutchinson Company free to purchase its gas to supply that demand from other owners than the Wichita Company. It could not and cannot have that effect without modifying many of the provisions in other paragraphs of the old contract than the fourth and eleventh. It did have that effect, and when it produced that effect the amount of gas the Wichita Company was to supply to the Hutchinson Company was conditioned by its will and wish, the amount the Hutchinson Company was to receive was conditioned by its will and wish, neither amount was certain or ascertainable, the Hutchinson Company was not legally bound to take, and cannot be lawfully compelled to take, under the new contract, any amount whatever from the Wichita Company, and the new agreement was void for want of mutuality. As to the future, the new contract fell under the rule that accepted orders for goods under such void contracts constitute sales of the goods thus ordered at the prices named in the contracts, but they do not validate the contracts as to articles which the one refuses to purchase or the other refuses to sell or deliver under the void contracts, because neither party is bound to take or deliver any amount or quantity of these articles thereunder. Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co., 114 Fed. 77, 81, 52 C. C. A. 25, 29, and cases there cited.

With enviable ability, industry, and patience counsel have sought out and cited many cases which they deem exceptions to the general rules (1) that a suit for an injunction against the breach of a contract should be determined by the same rules that cover a suit for the specific performance thereof, and (2) that a court of equity will not ordinarily decree specific performance of an agreement for one against whom it cannot efficiently enforce such performance, and have argued that this case should be ruled by the opinions in these exceptional cases. They have cited, and the court has read and considered, the opinions in Guffey v. Smith, 237 U. S. 101, 35 Sup. Ct. 526, 59 L. Ed. 856; Singer Sewing Machine Co. v. Union Button-hole & Embroidery Co., 22 Fed. Cas. 220, No. 12,904; Joy v. St. Louis, 138 U. S. 1, 11 Sup. Ct. 243, 34 L. Ed. 843; Texas Co. v. Central Fuel Oil Co., 194 Fed. 1, 5, 22, 24, 114 C. C. A. 21, 25, 42, 44; Franklin Telegraph Co. v. Harrison, 145 U. S. 459, 12 Sup. Ct. 900, 36 L. Ed. 776; People's Natural Gas Co. v. American Natural Gas Co., 233 Pa. 569, 82 Atl. 935, 938, 939; Columbus Ry. Co. v. Columbus, 249 U. S. 399, 408, 39 Sup. Ct. 349, 63 L. Ed. 669, 6 A. L. R. 1648; Western Union Telegraph Co. v. Union

Pacific Ry. Co. (C. C.) 3 Fed. 423, 425, 427; City of Moorehead v. Union Light, Heat & Power Co. (D. C.) 255 Fed. 920, 923; Mobile* Electric Co. v. City of Mobile, 201 Ala. 607, 79 South. 39, 43, L. R. A. 1918F, 667; Great Northern Ry. Co. v. Sheyenne Telephone Co., 27 N. D. 256, 263, 145 N. W. 1062; Marble Co. v. Ripley, 10 Wall. 339, 359, 19 L. Ed. 955, and in many other cases; but for various reasons neither these opinions nor the arguments of counsel regarding them have persuaded that this case should not be determined in accordance with the general rules.

[6] For example, counsel invoke the conceded rule that, where the entire consideration for the agreement of a defendant in a suit for the specific performance of a contract executory on his part was paid by the plaintiff before the commencement of the suit, a court of equity will enforce performance by the defendant, and then contend that, because before this suit was commenced the Hutchinson Company laid its mains and pipes in the city of Hutchinson and received and paid for the gas that was delivered to it, the court below should have compelled the Wichita Company to continue to deliver gas at the 30-cent rate during the remainder of the term of the contract. But the answer to this contention is that the complete performance of a part of the consideration for an executory agreement while another substantial part thereof remains executory, and so indefinite and shadowy as to be unenforceable, is fatal to a suit for the specific performance of it. Woerheide et al. v. Barber Asphalt Paving Co., 251 Fed. 196, 204, 163 C. C. A. 352, and cases there cited. And in the case at bar the agreement of the Hutchinson Company to take and pay for the gas after January 2, 1912, was and is a substantial part of the consideration of the new contract, and is so indefinite as to be unenforceable and void. Moreover, when the new agreement was made in January, 1912, the parts of the consideration of the old contract which counsel cites as paid had been fully performed, and not only the substantial, but practically the entire, consideration for the covenant of the Wichita Company to deliver gas after January 2, 1912, was the unenforceable and imaginary contract of the Hutchinson Company to receive and pay for it thereafter.

Counsel cite cases in which suits for specific performance brought by holders of options to discontinue their performance at will, which inhered in the agreements or were expressly granted to them thereby when the contracts were made, were sustained by the court; but in those cases neither the continuance of performance by the optionees for a fixed term nor their covenant to so continue was any part of the consideration of the agreements by the defendants to continue performance, while in the case at bar it is plain that the supposed covenants of the respective parties to continue performance constituted the real considerations each for the other of the new contract, and a decree for the performance by one of the parties while performance by the other cannot be enforced by the court, would work inequity, instead of equity.

[7] Counsel insist that the Wichita Company should be decreed to furnish and deliver gas at the 30-cent rate during the remainder of the

term of the contract, because it and the Hutchinson Company are engaged in the enterprise of supplying the public with gas, and because their relation to each other is in the nature of a partnership. They are not partners, and, whatever their relation to the public or to each other may be called, the new agreement fixes the rights and measures the liabilities of the Wichita Company; in the absence of any attempt by proper authority to exercise the police power of city, state, or nation to modify or affect their agreement.

And the conclusion is that this suit should be determined in accordance with the general rules set forth in the opening of this opinion, that the new agreement is, and has been ever since it was made on January 2, 1912, unenforceable and void for lack of mutuality as to the furnishing and delivery of any gas which the Wichita Company declines to deliver or the Huchinson Company to receive, that a court of equity ever since that date has been and is without jurisdiction or power to compel the Hutchinson Company to receive from the Wichita Company any natural gas or to pay for any natural gas which it does not wish to receive, and that therefore a court of equity ought not to enforce specific performance of this agreement against the Wichita Company. The conclusion of the court below that there was no equity in the bill and its dismissal thereof was just and equitable.

[8] There is another reason why there was no error in the decree of the court below. That part of the old agreement which became a part of the new one contains a recital that "whereas, the gas company controls an acreage of gas leases, with a number of gas wells thereon, in the gas belt of Kansas, and desires to market the gas therefrom," a covenant that the gas company will lay a pipe line on or before December 31, 1906, for conveying natural gas from the said gas fields of Kansas to a point at the city limits in the city of Hutchinson, and a covenant that as long as the wells and gas fields in Kansas mentioned therein are capable of producing it, not exceeding 20 years, the Wichita Company will—

"supply and deliver through its said pipe line, and through its said reducing and regulating station, natural gas in a volume sufficient to maintain a pressure not to exceed four to eight ounces to the square inch on the low-pressure lines of the said system in the said city, and at all times fully meet the demand for all purposes of domestic consumption as provided for in this contract. However, as the production of gas from wells and the conveying of it over long distances is subject to accidents, interruptions, and failures, the gas company does not by this contract undertake to furnish an uninterrupted supply of gas for the period named herein, but only to furnish such a supply for such a period of time as the wells and pipe line of the gas company are capable of supplying.

"It is expressly understood and agreed, however, that the gas company shall not be liable for any loss, damage, or injury to the party of the second part resulting directly or indirectly from any shortage or interruption in the supply of gas arising from any cause whatever; but the gas company agrees to use diligence in furnishing an adequate supply of merchantable gas for all the domestic consumers the party of the second part may secure within the corporate limits of the said city of Hutchinson as the said limits now exist or may hereafter be established by law."

The written notice of the Wichita Company, served on the Hutchinson Company, that it would not continue to supply its natural gas for two-thirds of 30 cents per 1000 cubic feet, contains a notice:

That the contract "substantially provided that the supply of gas to be furnished by the pipe line company should come from a certain gas belt then situated in the state of Kansas," that "for some time thereafter the gas supply did come from said wells," that "this local field constituted a limitation of the pipe line as to furnishing a supply of gas," that "since these years the gas belt alluded to in the contract has been exhausted," and that "the contract is void and unenforceable on account of the exhaustion of the supply involved therein."

The complainant has pleaded this contract and this notice—has attached them to its complaint and made them a part thereof. It has alleged in that complaint:

"That by the terms of said contract the defendant agreed to furnish only such a supply for such a period of time as the wells and pipe line of the defendant were capable of supplying, but the defendant agreed to use diligence in furnishing an adequate supply of merchantable gas for all domestic consumers the said J. O. Davidson might secure within the corporate limits of said city of Hutchinson as the said limits existed or might thereafter be established by law."

It alleged:

"That on account of the provisions of said contracts the defendant is obligated to use due diligence in supplying natural gas to the said city [of Hutchinson] and its inhabitants at not exceeding the rates fixed by said franchise. That the defendant now has available and is supplying said city and its inhabitants with an adequate quantity of natural gas."

The quotations which have been made embrace all the provisions in the contract pertinent to the extent of the Wichita Company's obligation to procure and supply natural gas to the Hutchinson Company. A careful consideration of the circumstances surrounding and the situation of the parties when the contract of 1906 was made, the known uncertainty of the amount of gas in the Kansas field, of the usual exhaustion of such fields in a few months or years, of the possible length of the term of the contract, of the purpose of the parties in making the agreement, of the express terms of that contract which have been quoted, of the context in which they stand in the agreement and of the entire body of the contract, have thoroughly satisfied that the intention of the parties in making the agreement and the true meaning and effect of it was and is that the Wichita Company agreed that as long as, not exceeding 20 years from December 31, 1906, the wells and the Kansas field in the Kansas belt described in the contract should be capable of furnishing a supply of natural gas sufficient to meet the demand for domestic consumption in the city of Hutchinson, it would furnish that supply and use diligence in furnishing from those wells and that field an adequate supply of merchantable gas for all the domestic consumers of Davidson and his successors in interest in the city of Hutchinson, but that it should not be liable for any loss or injury to them or either of them "resulting directly or indirectly from any shortage or interruption in the supply of gas from any cause whatever."

[9-11] If the suggestion should occur that the Wichita Company has continued to deliver and the Hutchinson Company to receive under the contract natural gas derived from other and more distant fields after the exhaustion of the Kansas field, and the rule should be invoked that courts incline to follow the interpretation of contracts which the parties thereto have adopted, the answers are: (1) This rule is advisory, not mandatory, it is inapplicable where the terms of the contract and the meaning of the agreement are clear and certain, and the terms of this contract leave no doubt of their meaning; (2) the conclusion that the parties adopted the construction that required the Wichita Company to furnish natural gas to the Hutchinson Company from other fields more distant than that specified in the agreement is not established by the fact that it has been furnishing such gas and the Hutchinson Company has been receiving it on the terms of the contract since the Kansas field was exhausted; and (3) the fact that a party to a contract has continued to do the same acts after its term has expired that he agreed to do during its term in no way obligates him to continue so to do.

The contract of the Wichita Company then was that it would furnish the gas as long as the Kansas field and wells and the pipe line were capable of supplying it. By the terms of this agreement their capability to furnish this supply was a condition precedent to the existence of the Wichita Company's obligation to furnish gas at every moment after the original contract was made. If at any time that capability existed at that time the obligation existed. If at any time the capability did not exist at that time the obligation did not exist. The complainant appealed to the court of equity below to compel the Wichita Company to perform that obligation in October, 1919, and thenceforth until December 31, 1926; but it did not allege that the capability of the wells and gas field of Kansas which conditioned that obligation then was or thereafter would be in existence, and for that reason the bill stated no equity against the Wichita Company, and it was rightly dismissed.

[12] The arguments of counsel and the authorities they cite, to the effect that the incapability of the wells and the Kansas field was a matter of defense, and that it was not necessary for the complainant to allege their capability, have been read and carefully considered; but they have failed to convince that, after the complainant had set out and made the contract which shows the capability of the wells and field to be a condition precedent to the existence at any time of the obligation it seeks to enforce, and had set out and made a part of its complaint the notice of the Wichita Company which shows that it claims that the capability did not and does not exist, its complaint stated any cause of action in equity against the defendant without an averment of the existence of the condition precedent without the existence of which the obligation it sought to enforce was not.

Let the decree below be affirmed.

CARLAND, Circuit Judge. I concur in the judgment of affirmance on the ground of want of mutuality of the contract. I dissent from the

reasoning whereby the affirmance of the judgment below is sought to be sustained on account of the alleged exhaustion of gas in the Kansas ·field.