No. 13,083.

Piggly Wiggly, Grimes Company et al. v. Lowell Packing Company.

(29 P. [2d] 623)

Decided December 18, 1933.   Rehearing denied January 29, 1934.

Mr. W. D. Wright, Jr., Mr. Victor A. Miller, for plaintiff in error.

Mr. James A. Marsh, Mr. Benjamin E. Sweet, for defendant in error.

*En Banc.*

Mr. Justice Burke delivered the opinion of the court.

These parties appeared in reverse order in the trial court. The fact that defendant in error was, as to a portion of its claim, an assignee, and the reason for the appearance of Continental Food Stores, Inc. as a party, are immaterial here. For convenience we refer to plaintiffs in error as P-W and to defendant in error as Lowell.

Alleging that it had sold canned goods to P-W which the latter had refused to accept or pay for, and which it had thereafter resold, Lowell brought this action for its loss. On a trial to the court it had judgment for $8,714.60. To review that judgment P-W prosecutes this writ and assigns 14 alleged errors. While sufficient to raise the questions hereinafter considered these are largely argumentative, some deserve no notice, and some are immaterial in view of our conclusions. The briefs do not follow these assignments and we shall not attempt to do so, but will note the vital questions they raise. So far as material they present the fundamental contention that the trial court erred in its interpretation of three written contracts, hereinafter referred to as A, B and C.

Lowell dealt wholesale, and P-W retail, in canned peas, and the contracts in question cover sales thereof by the former to the latter. The complaint contains three causes of action, each based upon one of said contracts. The first involved 1000 cases, none of which were accepted, was based on A, and the alleged loss was $1,200. The second involved 8000 cases, of which but 900 were accepted, was based on B, and the alleged loss was $7,-

514.60. The third involved 7250 cases, of which 5600 were accepted, was based on C, and the alleged loss was $2,634.14.

A is denominated "packed to order canned foods contract," is dated April 3, 1925, and recites that it is "effective Jan. 1, 1925," and that the "buyer has this day bought, and  *  *  *  seller has this day sold  *  *  *." B is of like date and terms, save that it contains a provision, which we hereinafter refer to as the cancellation clause, reading, "1st car to be shipped as soon as packed. Balance as ordered out until new pack 1926. Unused portion to be cancelled at that time by buyer if desired." C is denominated "Future Sales Contract," is dated March 10, 1924, as to delivery provides, "1st car, soon as packed, 2nd car 3 weeks later, balance as ordered out by Mar. 15th, 1925," and defines the meaning of certain terms used as descriptive of the goods.

The answer alleged that A was not absolute, but optional, otherwise it denied generally. The allegations were the same as to B, with the additional defense that the goods were not of contract grade. The allegations as to C were that the goods were not of contract grade, that Lowell had admitted this, and that all liability thereunder was settled and cancelled by the execution of A and B. All new matter contained in the answer, and material here, was denied by replication.

Judgment was first entered for the full amount of the demand, and thereafter reduced by the amount claimed on the third cause of action. This reduction was, however, general, and P-W's motion to amend to show, specifically, that judgment was for Lowell on the first and second causes and for P-W on the third, was overruled. On this modification Lowell assigns cross-error.

For convenience we consider the three causes of action in reverse order.

1. The goods, covered by the third cause of action, purchased under C, in 1924, were unsatisfactory; they did not sell. P-W was clearly an important custo-

mer, and, just as clearly, Lowell was anxious to retain its business. To do so it made definite and attractive representations as to what it would do on 1925 contracts, and what could be done by P-W with goods purchased under them. It is undisputed that liability under C was settled by the final negotiation of A and B. Lowell however contends that the consideration for this settlement was not the execution of A and B, but their performance. On the same theory a note given to settle a disputed open account is no accord and satisfaction until the note is paid; and if the debtor defaults on the note the creditor may sue on both. There are, of course, cases where performance, not promise, is the consideration. 1 C. J., p. 567, §98 and p. 530 Id., §17. But Lowell's suit on the promise binds it. We know of no case where the creditor was permitted to hold the debtor on both demands; in other words, penalize him for failure to keep his promise by forcing him to pay twice. Moreover, since we hereinafter hold P-W on A, and find that it has performed B, the consideration claimed by Lowell stands. All incidental questions arising under this cause of action were questions of fact for the trial court, and we approve its modification of the judgment.

█ 2. The second cause of action, based on B, was sustained by the court on extrinsic evidence, interpreting and explaining the contract. But the contract needs neither. It is said that B obligated P-W to take its "requirements," up to the limit of the contract, of Lowell thereunder. First, we observe there is nothing in the contract about requirements. Second, if the word be construed into the contract it must be limited to P-W's requirements for Lowell peas, i. e., what it could reasonably sell of the specified grades of the Lowell brand. Otherwise this contract would give Lowell a complete monopoly of P-W's business, within its limits, and if Lowell peas did not sell P-W would be forced out of the pea business. Nothing in the record justifies such an interpretation. P-W claimed these peas were below con-

tract grade. On that question the evidence is conflicting and the trial court's finding would be conclusive if the fact were determinative of the issue, but it is not. It is uncontradicted that the Lowell peas did not sell, in spite of P-W's every effort to advertise and push them; and of course P-W had no "requirements" for peas its customers would not purchase, whatever the cause. It would not order these goods out faster than sold, or faster than it had reasonable hopes of selling. The remainder was that "unused portion" covered by the cancellation clause. That clause has no relation to defective goods. If the peas were not up to contract P-W required no such provision for its protection, and if defective grade was the only ground for cancellation the clause had no meaning. Again, it is urged that the clause is unavailing to P-W because there was no express cancellation. None was necessary. P-W did not take the peas, Lowell was fully advised of the reason, and Lowell resold. After "new pack 1926" P-W could not demand the peas, and after resale Lowell could not claim noncancellation. This was clearly a case where the court made a new contract for the parties on extrinsic evidence, on the theory of interpreting words which were not open to interpretation. 22 C. J., p. 1173, §1570; *Goode v. Riley,* 153 Mass. 585, 28 N. E. 228. Secret intentions cannot thus be read into contracts whose terms are unambiguous. *Cold Blast Transp. Co. v. Kansas City B. & N. Co.,* 114 Fed. 77. On this cause of action judgment should have been for P-W.

3. The contract A, which is the basis of the first cause of action, contains no cancellation clause. It is a straight purchase and sale agreement, and speaks for itself. P-W attempted, by extrinsic evidence, to show that the clause should have been inserted in it. To thus permit its modification would violate the very rule under which we find for P-W on the second cause of action. In fact the attempted modification of A is more radical than the attempted modification of B.

The judgment is reversed and the cause remanded with instructions to enter judgment for defendant in error on the first cause of action and for plaintiff in error on the second and third.

MR. JUSTICE HOLLAND not participating.

MR. JUSTICE BOUCK dissents in part.

MR. JUSTICE BOUCK, dissenting in part.

I dissent from the reversal of judgment as to the second cause of action.